**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Aaron Ward and Betsy Ward, | ) | CIVIL ACTION NO. 3:18-cv-00263 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE: |
| v. | ) | |
| | ) | **COMPLAINT AND DEMAND FOR JURY** |
| Mark J. Stucke and Mary Ann E. Stucke, | ) | **TRIAL** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**COMPLAINT**

Plaintiffs Aaron Ward and Betsy Ward, husband and wife, by their undersigned counsel, file this Complaint and aver the following:

**NATURE OF THE ACTION**

1.      Plaintiffs, Aaron and Betsy Ward, (the "Wards") bring this action against Defendants Mark Stucke and Mary Ann Stucke (the "Stuckes") under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, seeking declaratory and injunctive relief, the assessment of penalties, and an award of litigation costs and fees, to address the Stuckes' violations of the Clean Water Act.

2.      The Stuckes altered land under their possession and control in an unreasonable manner that has caused harm and will continue to cause harm to the Wards' health, their real property,

1

their home, and their use and enjoyment of their property. The Defendants' acts and omissions constitute a continuing private nuisance and a continuing trespass under Ohio law.

## JURISDICTION AND VENUE

3. This case arises under CWA Section 505, 42 U.S.C. § 1365(a), against the Defendants for past and continuing violations of the Clean Water Act ("CWA").

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1251 et seq. (The Clean Water Act). An actual, justiciable controversy exists between the Plaintiffs and the Defendants.

5. This Court may exercise jurisdiction over the Plaintiffs' claims for private nuisance and trespass pursuant to 28 U.S.C. § 1367.

6. This Court may issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 & 2202.

7. Aaron and Betsy Ward gave notice of the citizen suit violations alleged in this Complaint, and their intent to file suit, on February 14, 2017, prior to commencement of this lawsuit. Aaron and Betsy Ward provided such notice to the Defendants and all other required parties. A copy of this Notice letter and its enclosures is attached as Exhibit 1 and incorporated herein.

8. More than sixty (60) days have passed since Aaron and Betsy Ward served notice. The violations complained of have not ceased.

9. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred there and the Plaintiffs reside in the Southern District of Ohio. 28 U.S.C. § 1391(b)(2). The violations and harms giving rise to the

2

Plaintiffs' claims occurred in Darke County, Ohio, and the properties at issue are also located in Darke County, Ohio.

**PARTIES**

10.     Plaintiffs Aaron and Betsy Ward are husband and wife and residents of Darke County, Ohio. Mr. and Mrs. Ward have owned and lived at their residence and property at 7418 N State Route 49, Greenville, Ohio 45331 for approximately 14 years.

11.     The Defendants, Mark and Mary Ann Stucke, reside at 11411 State Route 185, Versailles, OH 45380.

12.     The Defendants, Mark and Mary Ann Stucke, are owners and managers of property located in Darke County, Ohio, Parcel ID #F24-0-212-21-00-00-10100 (hereinafter "the subject property"). The property consists of approximately 191 acres of field used primarily for agricultural purposes.

13.     The Defendants and/or their predecessors in ownership of the subject property have engaged in a number of land-altering activities on the subject property that has altered the flow of surface and subsurface water.

14.     The subject property lies adjacent to the Wards' property and residence. The Wards have suffered injuries, are presently suffering injuries, and will continue to suffer injuries that are directly traceable to the land-altering activities at the subject property.

15.     The Wards have suffered, are suffering, and will continue to suffer actual and threatened injury to their health, safety, and welfare, and to their property, due to the Defendants' activities and violations of the Clean Water Act, as described in this Complaint.  The Wards' health and the use and enjoyment of their property have diminished as a result of the Defendants' activities and CWA violations. The Defendants' CWA violations and illegal discharges have

resulted in flooding that has damaged the Wards' home and property. In addition, dirt, silt, biological material, road runoff, and other pollutants within the Defendants' discharges have entered and remained on the Wards' property.

16. Without redress for the harmful activities and the violations of the Clean Water Act as described in this Complaint, the Wards will continue to suffer injuries. Providing the relief requested in this Complaint will redress those injuries.

## STATUTORY AND REGULATORY BACKGROUND

17. A primary purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, Section 301(a) of the CWA prohibits "the discharge of any pollutant" into a water of the United States, except when authorized by a permit pursuant to Sections 402 or 404. *Id*. at §§ 1311(a), 1342, 1344.

18. The CWA at Section 502(12) defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

19. The CWA at Section 502(6) defines "pollutant" to include, among other things, dredged spoil, rock, sand, and biological materials. 33 U.S.C. § 1362(6).

20. The CWA at Section 502(14) defines "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock … from which pollutants are or may be discharged…." 33 U.S.C. § 1362(14).

21. Section 301(a) of the CWA prohibits the dredging or filling of "waters of the United States," which may include wetlands, unless the Secretary of the Army, acting through the Army Corps of Engineers ("Army Corps"), permits the dredge or fill activity under Section 404 of the CWA. 33 U.S.C. § 1344.

4

22.    "Dredged material" refers to material that is excavated or dredged from waters of the United States, and the discharge of dredged material includes redeposit of dredged material. 33 C.F.R. § 323.2(c) and (d)(1).

23.    "Fill material" refers to material that replaces an aquatic area with dry land or changing the bottom elevation of a waterbody, and includes rock, sand, soil, clay, and overburden. 33 C.F.R. § 323.2(e).

24.    Waters of the United States includes traditional navigable waters, and is defined as all waters which are currently used, were used in the past, or may be susceptible to use in interstate commerce. 40 C.F.R. § 230.3(o).

25.    Relatively permanent, non-navigable tributaries of navigable waters constitute waters of the United States, and are subject to Clean Water Act jurisdiction.

26.    Waters of the United States also includes rivers, streams (including intermittent streams), wetlands, and wet meadows adjacent to traditionally navigable water and waters of the United States, including adjacent wetlands that do not have a continuous surface connection to traditional navigable waters or other waters of the United States. *See* 33 C.F.R. § 328.3(c).

27.    Tributaries and wetlands also constitute waters of the United States, and are subject to Clean Water Act jurisdiction, where they have a significant nexus with traditional navigable waters. Tributaries and wetlands possess the requisite nexus when they, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other waters more readily understood as navigable. *Rapanos v. United States*, 547 U.S. 715, 780 (2006).

*Citizen enforcement under the CWA*

28.     The citizen suit provision of the CWA, 33 U.S.C. § 1365(a) authorizes "any citizen" to commence a civil action against "any person" who is alleged to be in violation of any "effluent standard or limitation" under the CWA.

29.     33 U.S.C. § 1362(5) of the CWA defines the term "person" as an individual, corporation, partnership, association, State, municipality, and any political subdivision of a State.

30.     Each Plaintiff is a "citizen" within the meaning of 33 U.S.C. § 1365(a).

31.     Each Defendant is a "person" within the meaning of the Clean Water Act. 33 U.S.C. §§ 1365(a)(1) and 1362(5).

## FACTUAL BACKGROUND

*Facts related to Defendants' land-altering activities*

32.     Aaron and Betsy Ward own and reside on property at 7418 N State Route 49, Greenville, Ohio (the "Ward property") with their 3 minor children. The Wards have owned and resided on the Ward property since 2004.

33.     From the time the Wards moved into their residence located at the Ward property until July 13, 2015, the Wards never experienced flooding or damages related to flooding in their home or on their property.

34.     The Stuckes own and operate the subject property primarily for agricultural purposes. The subject property consists of approximately 191acres of land immediately west of the Ward property in Darke County, Ohio, Parcel ID #F24-0-212-21-00-00-10100.

35.     Sometime in the 1990s the Defendants and/or their predecessor in ownership installed two grassed waterway channels on the subject property, which collect and divert surface water runoff to a private ditch and stream on the edge of the east end of the property.

36.    The private ditch and stream that each grassed waterway channel drains into runs along the Wards' property, and is part of the headwaters of Boyd Creek. This private ditch and rest of Boyd Creek is a relatively permanent tributary of the Stillwater River.

37.    The waterway channel on the north-side of the subject property runs approximately 3,700 linear feet and ends at a private ditch and stream at the east end of the property, and the waterway channel at the south-side of the property runs approximately 3,300 linear feet and also ends at the private ditch and stream at the east end of the property.

38.    Prior to the installation of the two channels on the subject property, the headwaters to Boyd Creek existed at the eastern edge of the subject property, around the location where the private ditch and stream begin. After installation, the two grassed waterway channels became the start of the headwaters to Boyd Creek, significantly altering the characteristics of the Boyd Creek watershed.

39.    The installation of grassed-waterway the drainage channels modified and altered the existing drainage ditch and stream at the headwater of Boyd Creek, a water of the United States.

40.    Neither the Stuckes nor their predecessors have ever obtained authorization from the Army Corps, the U.S. EPA, or the Ohio EPA for the installation of the two grassed-waterway channels on the subject property.

41.    Upon information and belief, sometime in the fall of 2014 the Defendants installed field drainage tiles ("drainage tile" or "field tile") throughout the 191-acre subject property. The purpose of the drainage tile was to drain the natural water logged conditions that existed on the subject property.

42. Drainage tiles are hollow, perforated tubes buried underground from 1 to 5 feet in depth. As water infiltrates into the soil it collects in the tile and drains offsite into a ditch or stream.

43. The drainage tiles on the subject property divert infiltrated surface waters and subsurface waters into the private ditch and stream. The drainage tile has also altered natural wet or waterlogged conditions on the land.

44. Prior to the fall of 2014, the subject property contained numerous pools and swales on its surface regularly. The soils within and surrounding these pools were conductive to growth and development of plant species adapted to life in saturated soils. These saturated areas can be seen as dark patches on the subject property in the attached Exhibit 2. Exhibit 2 is a true and correct copy of an aerial photo of the subject property and surrounding areas prior to the field tile installation.

45. After the installation of the drainage tiles, these pools and swales were significantly lessened and eliminated after rainfalls, and are no longer conductive to growth and development of plant species adapted to life in saturated soils. The dryer conditions of the land can be observed in the attached Exhibit 3. Exhibit 3 is a true and correct copy of an aerial photo of the subject property and surrounding areas after the installation of the field tile.

46. The installation of the field tile has additionally modified and altered the existing drainage ditch at the headwater of Boyd Creek, a water of the United States.

47. The installation of the drainage tile has had the effect of greatly increasing water runoff into the private ditch and headwaters of Boyd Creek, especially during and after rain events, by eliminating large areas of natural water storage and diverting water directly to the drainage ditch

8

and Boyd Creek, and by drying up the land and causing more rapid water runoff from the subject property to the private ditch and Boyd Creek.

48.    The Defendants installed the drainage tiles, and significantly increased the rate and volume of water discharge and stormwater runoff into the private ditch and stream, without adequate consideration of downstream property owners.

49.    Prior to the installation of the drainage tiles, the saturated areas of subject property would hold floodwaters and intercept sheet flow across the property, releasing water in a more consistent manner. These areas would also collect and hold water during significant rain events, helping to moderate flood flows and acting as a biological filter prior to filtering downstream into Boyd Creek.

50.    The pools and saturated soils and water that were on site at the subject property are directly adjacent to Boyd Creek and are hydrologically connected to Boyd Creek and the Stillwater River.

51.    The earth moving activities that occurred during the installation of the two drainage channels resulted in the placement of dredged material and/or fill material under CWA Section 404, 33 U.S.C. § 1344.

52.    The earth moving activities that occurred during the installation of the drainage tile throughout the subject property resulted in the placement of dredged material and/or fill material under CWA Section 404, 33 U.S.C. § 1344.

53.    The earthmoving equipment used to place the dredged or fill material in the wetlands and headwaters of Boyd Creek are point sources under CWA section 502(14), 33 U.S.C. § 1362(14).

9

54.   Boyd Creek is an approximately 3.3 mile tributary of the Stillwater River. Boyd Creek is a water of the United States because, among other reasons, it is a tributary of the Stillwater River and because of its direct hydrologic connection to the Stillwater River.

55.   The Stillwater River rises near the Indiana border, running approximately 70 miles until it joins the Great Miami River in Dayton, which eventually flows into the Ohio River.

56.   The Stillwater River, the Great Miami River, and the Ohio River are all navigable waters pursuant to the Clean Water Act.

57.   As a result of the drainage tile installation, the stream volume and velocity to and through the ditch and Boyd Creek has significantly increased, especially during and after storm events. The installation of the drainage tile has reshaped the ditch and stream area, expanded the area drained by the ditch and stream, and increased the drainage capacity of the ditch and stream area beyond its manageable capacity.

58.   The Defendants have discharged and continue to discharge dredged or fill material into seasonal wetlands and intermittent and ephemeral drainages, which are waters of the United States, without a permit in violation of Section 404 of the CWA.

59.   The Defendants have discharged and continue to discharge pollutants contained in stormwater, surface water, road runoff, and other infiltrated water from the drainage channels and field tiles into Boyd Creek and/or its headwaters without a permit in violation of Section 402 of the CWA.

60.   Removal of the drainage tile and plugging or filling the drainage channels would have the effect of restoring and repairing the impacted waters of the United States.

*Harm to the Plaintiffs from the Defendants' unlawful actions*

61. The subject property is located directly west and upgradient of the Wards' home and property. The private ditch and headwaters of Boyd Creek where the field tile and grassed waterways discharge surface water, groundwater, and stormwater abuts the Wards' property.

62. On or about July 13, 2015, a heavy rain event occurred and the stormwater, groundwater, and surface water discharges from the subject property overflowed and flooded the private ditch and flooded the Plaintiffs' and other nearby properties in the area abutting the private ditch.

63. The flooding on July 13, 2015 entered the Plaintiffs home and rose rapidly, resulting in a rapid infiltration of water in the Wards' home. The Wards were forced to hastily evacuate their home that night, having to wade through dangerous, chest-high water with their three children to escape the flooding.

64. The flooding on or about July 13, 2015 completely destroyed the Wards' home and rendered it inhabitable. The flooding also destroyed the Wards' personal belongings within the home and on their property, and the two cars in their garage were flooded underwater and totaled.

65. The flooding on July 13, 2015, and the flooding of the ditch and stream since that date, is a direct result of the Defendants' diversion of water to the ditch and stream beyond its capacity. Nearby property owners not abutting the ditch and stream did not experience flooding on July 13, 2015.

66. The Wards own a coffee shop where they are both the sole workers. The Wards were forced to close their coffee shop after the flood on July 13, 2015 to attend to their family and home on numerous occasions.

11

67.     The Wards were unable to live in their home until March of 2016, approximately eight (8) months after their house was flooded in July of 2015. For these eight (8) months the Wards were residing at Aaron Wards' parents' home and sleeping on the floor.

68.     The Wards have invested more than one-hundred and forty thousand dollars ($140,000.00) in making their home habitable again, and are currently living back in the residence and on the property at 7418 N State Route 49, Greenville, Ohio.

69.     The ditch along the Wards' property continues to overflow, flood, and damage the Wards' property during storms and heavy rain events due to the Defendants' land-altering activities on the subject property, as described herein.

70.     The flooding caused by the Defendants' land-altering activities and continuing discharges continues to this day. The floodwaters carry silt, dirt, crop materials, road runoff, and other biological materials and pollutants from the field that accumulate and remain on the Plaintiffs' land and property.

71.     The flooding since July 13, of 2015 to the present day has rapidly eroded the Wards' property where it abuts the private ditch and stream. Since July of 2015 the increased water flow to the ditch has eroded over three (3) feet of the Wards' property abutting the ditch.

72.     The consistent flooding of the Wards' property has diminished their quality of life. The Wards suffer from stress and anxiety due to the increased discharges and new flooding issues, and the risk that their home and property will again be destroyed and continue to be eroded, and from the danger their family is in during storm and heavy rain events due to the potential flooding.

12

**VIOLATIONS OF THE CLEAN WATER ACT**

COUNT ONE
*Discharge of pollutants without a permit*

73.     Plaintiffs reallege and incorporate by reference herein all above allegations and aforementioned exhibits.

74.     Each grassed-waterway drainage channel constitutes a "point source" pursuant to 33 U.S.C. § 1362(14).

75.     Each field tile constitutes a "point source" pursuant to 33 U.S.C. § 1362(14).

76.     The stormwater, surface water, and infiltrated water carried and transported by the grassed waterway drainage channels and the field tiles contain "pollutants" as defined by the CWA, 33 U.S.C. § 1362(6), including dirt, biological materials, road runoff, chemical wastes from farming activities, rock, sand, and other chemicals and pollutants.

77.     Defendants have violated and are violating section 301(a) of the CWA, 33 U.S.C. § 1311, which prohibits discharges of pollutants without a permit, by causing and allowing continuous discharges of pollutants contained in surface water, groundwater, and stormwater runoff from each drainage channel and field tile constructed on the subject property.

78.     The discharges from the field tiles that contain groundwater, infiltrated surface water, silt, infiltrated road runoff, biological materials and other pollutants is neither agricultural return flows nor agricultural stormwater runoff.

79.     The discharges from the grassed waterway drainage channels contain a mixture of road runoff materials, biological materials, and stormwater runoff, and are neither solely agricultural stormwater nor agricultural return flows.

80.     Defendants have violated and are violating section 301(a) of the CWA, 33 U.S.C. § 1311, which prohibits discharges of pollutants without a permit, by causing and allowing

13

continuous discharges of pollutants contained in discharges from the drainage tile installed on the subject property. These illegal discharges occur whenever water and subsurface water drain from the subject property, and occur at least on each day after each rain event since the installation of the field tiles.

81.    Each unauthorized discharge of a pollutant into waters of the United States constitutes a separate violation of section 301 of CWA, 33. U.S.C. § 1311.

COUNT TWO
*Unauthorized discharges of dredged and/or fill materials*

82.    Plaintiffs reallege and incorporate by reference herein all above allegations and all aforementioned exhibits.

83.    The Defendants, by their acts or omissions, including the acts or omissions of their agents, used mechanized land-clearing equipment and/or earth moving equipment to discharge dredged and or fill material in and around the subject property.

84.    The wetlands and stream channels at the subject property were "waters of the United States" within the meaning of the CWA and the regulations promulgated thereunder.

85.     The mechanized equipment and/or earth-moving equipment constituted "point sources" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

86.    The discharges of dredged and/or fill material described herein constituted discharges of a pollutant within the meaning of CWA Section 301 and 502(12). 33 U.S.C. §§ 1311, 1362(12).

87.     Defendants' land-altering activities were not authorized by a permit or authorization issued by the Corps or any other agency pursuant to CWA Section 404(a), 33 U.S.C. § 1344(a).

88.     Defendants are likely to continue to discharge dredged and/or fill material into, and/or allow dredged and/or fill material to remain in, waters of the United States in violation of CWA Sections 301 and 404 unless injunctive relief is granted.

## PRIVATE CAUSES OF ACTION

### COUNT THREE
*Private Nuisance*

89.     Plaintiffs reallege and incorporate by reference herein all above allegations and aforementioned exhibits.

90.     Defendants, by their acts or omissions, including the acts or omissions of their agents, have caused an unreasonable and substantial interference with the Plaintiffs' right to use and enjoy their property.

91.     The Defendants have, at all relevant times, retained exclusive control over the use and maintenance of the subject property, including the drainage channels and field tile at the subject property.

92.     The Defendants' agricultural and land-altering activities were not conducted in accordance with due care for neighboring properties, as alleged in this Complaint.

93.     The Defendants did not adequately consider the downstream impacts to neighboring properties, including the Plaintiffs' properties, when installing the drainage channels on the subject property.

94.     The Defendants did not adequately consider the downstream impacts to neighboring properties, including the Plaintiffs' properties, when installing the drainage tile on the subject property.

95.     The nuisance has occurred, and it continues, or is likely to continue, into the future.

15

96.    Defendants, by reason of their private nuisance, must prevent further nuisance and remediate the damage.

97.    Defendants are liable for all damages and injuries to the Plaintiffs' and their property caused by the flooding and potential flooding of the private ditch and stream and Plaintiffs' property.

98.    As a direct and proximate result of the Defendants' negligent and reckless acts and omissions in altering the subject property, Plaintiffs have suffered significant impairment to the use and enjoyment of their property, including, but not limited to, damage to their home and property, substantial inconvenience and discomfort, annoyance, anxiety, distress, embarrassment, fear, concern that a flood will endanger their home and family, difficulty sleeping, deprivation of the ability to further develop their property, and destruction of the serenity of the property, for which Plaintiffs are entitled to relief and compensation.

99.    The Defendants knew or should have known that their conduct, as described herein, had, and continues to have, a substantial likelihood of causing significant injury to Plaintiffs and Plaintiffs' property without their consent.

100.   Further, all or some of the Defendants' acts and omissions described herein were and continue to be intentional and/or grossly, recklessly, and/or wantonly negligent, and were done with utter disregard for Plaintiffs and the Plaintiffs' property, safety, and well-being, and therefore Plaintiffs are entitled to an award of punitive damages.

## COUNT FOUR
*Trespass*

101.   Plaintiffs reallege and incorporate by reference herein all above allegations and all aforementioned exhibits.

16

102. At all relevant times alleged in this Complaint, Plaintiffs had exclusive ownership and possession of their property.

103. The Defendants have, at all relevant times, retained exclusive control over the use and maintenance of the subject property, including the drainage channels and field tile at the subject property.

104. The Defendants and their agents have intentionally, recklessly, or negligently, and without privilege or license to do so, caused surface and subsurface water, silts, and debris to enter and remain on the lands of the Plaintiffs.

105. The Defendants and/or their agents, by their intentional, negligent, and reckless acts, and without privilege or license to do so, have disrupted the natural flow of surface and subsurface water on the subject property, causing heavy water and stormwater runoff to enter, flood, and remain on the lands of the Plaintiffs, and destroy the Plaintiffs' home and residence.

106. By unlawfully causing excess water, silt, and other materials and runoff to flow onto Plaintiffs' land and flood the Plaintiffs' home the Defendants and/or their agents have trespassed and encroached upon Plaintiffs' land and wrongfully interfered with and disturbed the Plaintiffs' rightful possession, use, and enjoyment of their land and home.

107. The Defendants have been aware that the discharge of water, silt, and other runoff has damaged and is continuing to damage the lands of the Plaintiffs.

108. The Defendants' trespass is continuous and ongoing.

109. The Defendants' trespasses have resulted in significant damage to Plaintiffs' home and property, thereby causing deprivation to the Plaintiffs' right of possession of their property.

110. Further, all or some of the Defendants' acts and omissions described herein were and continue to be intentional and/or grossly, recklessly, and/or wantonly negligent, and were done

with utter disregard for Plaintiffs and the Plaintiffs' property, safety, and well-being, and therefore, Plaintiffs are entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that the Court grant the following relief:

A. Declare that the Defendants have violated and are in violation of the CWA;

B. Issue a preliminary and permanent injunction that prevents the Defendants from discharging or causing the discharge of pollutants and dredged or fill material into any water of the United States except in compliance with a CWA permit or authorization;

C. Issue a preliminary and a permanent injunction barring the Defendants from engaging in the acts complained of and requiring Defendants to abate the nuisances, trespasses, wrongful acts, violations, and damages created by them;

D. Order Defendants to take measures to effect complete restoration of waters of the United States and to mitigate unauthorized impacts to waters of the United States, as appropriate;

E. Assess civil penalties against the Defendant for $37,500 dollars for each day of violation of CWA section 301(a), as provided by 42 U.S.C. § § 1319(d), 1365 and 40 C.F.R. Part 19 (adjustment of civil monetary penalties);

F. Award Plaintiffs their costs of litigation, including reasonable attorneys' fees;

G. Award compensatory damages for all harms and losses suffered by Plaintiffs;

H. Award costs and other compensation for Plaintiffs' inconvenience and discomfort;

I. Award costs and other compensation for Plaintiffs' emotional distress and mental suffering;

18

J.   Award costs and other compensation for damages to Plaintiffs' home and property;

K.   Costs and compensation necessary to remediate Plaintiffs' home and property to their

former condition;

L.   Award punitive damages; and

M.   Grant such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs respectfully request a trial by jury on all issues so triable.

Date: August 6, 2018                    Respectfully submitted by:


/s/ James Yskamp_____
James Yskamp, Esq. (0093095)
Trial Attorney
Email: jyskamp@fairshake-els.org


Fair Shake Environmental Legal Services
159 S. Main Street, Suite 1030
Akron, OH 44308
Telephone: (234) 571-1972
Fax: (412) 291-1197
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, James Yskamp, hereby certify that a true and correct copy of the foregoing Complaint and Exhibits were filed electronically and sent to all the below listed individuals on this 6th day of August, 2018 via the means and at the address listed below as follows:

Mark J. and Mary Ann E. Stucke                     *Via Certified U.S. Mail*
11411 St. Route 185
Versailles, OH 45380


Andrew Wheeler                                     *Via Certified U.S. Mail*
Acting Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W. (Mailcode: 1101A)
Washington, D.C. 20460


Jeff Sessions                                      *Via Certified U.S. Mail*
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001




Date: August 6, 2018                    By:    /s/  James Yskamp_____
                                               James Yskamp, Esq. (0093095)