# Exhibit 1



*Legal Counsel.*

DINSMORE & SHOHL LLP
Fifth Third Center ^ One South Main Street ^ Suite 1300
Dayton, OH 4S402
www.dinsmore.com

Timothy D. Hoffman
(937) 449-2847 (direct) ^ (937) 449-2821 (fax)
tim.hoffman@dinsmore.com

February 14, 2017

**VIA CERTIFIED MAIL**

Mr. Mark J. and Mrs. Mary Ann E. Stucke
11411 St. Rt. 185
Versailles, OH  45380

RE: Citizen Suit Notice Under the Clean Water Act.

Dear Mr. Stucke:

As you know I represent Aaron and Betsy Ward (the "Wards") in connection with the significant damages suffered by them as a result of the illegal creation of drainage channels on your property resulting in the unreasonable discharge of storm water in violation of the Clean Water Act ("CWA") and Ohio common law. 33 U.S.C. 1311, 1342, 1344.

This letter is a sixty-day notice under the CWA.  This letter communicates the intent of the Wards to sue for the illegal discharge of surface and subsurface waters into their private ditch in violation of the CWA and Ohio law  (reasonable use, nuisance, trespass, negligence, etc.).  This letter is provided pursuant to the notice requirements of the citizen suit provisions of the CWA (33 U.S.C. 1365(b)(1)(A)) and its implementing regulations.

Since August 1994, Melvin B. Stucke and/or Stucke Family Partnership and/or Mark J. Stucke and/or Mary Ann E. Stucke have engaged in land-altering activities on their 191 acre tract of land, more specifically identified as Darke County, OH, Parcel ID #F24-0-212-21-00-00-10100, herein referred to as "the Site".  Pursuant to records received through a FOIA request of Betsy Ward (2016-NRCS-00028-A), plans were designed and then signed by Paul A. Decker, a Certified Engineering Technician, working in the Darke County Soil & Water Conservation Office, to create grass waterway channels located on "the Site".  These plans were required to calculate the efficiency flow of storm water drainage during a two-year storm event to the benefit of the "the Site". However, benefits to downstream landowners were not considered and consequently, the effects of such discharge were not acknowledged.

According to Nichole Lashley, Auxano Environmental, LLC, there are several issues with the activities described above (see letter enclosed dated September 2, 2016). First, a Certified Engineering Technician is not qualified to sign off on these types of hydrology assessments in the State of Ohio; only a certified licensed professional

11060082v1

Mr. Mark J. and Mrs. Mary Ann E. Stucke
February 14, 2017
Page 2

engineer, is qualified to render approval. Calculations should have been conducted to determine if the post development discharges did not exceed (at the time) current-condition discharges for one or more storm frequencies at specified points along the created channels. This process was not completed. Therefore, no protections to the downstream owners were considered, nor were time of concentration (TOC) calculations at peak flows conducted to determine the effect of the discharges. Ms. Lashley continues to state that a certified licensed professional engineer may have caught these issues had one properly reviewed and signed off of the plans.

Second, a US Army Corps of Engineers ("ACOE") permit should have been obtained under the Clean Water Act. Any alteration to waters of the United States beyond a minor impact is/was regulated by the ACOE and not subject to an agricultural use exemption. Since the north created channel was 3,700 linear feet and the south created channel was 3,300 linear feet meeting at a pinch point at a private ditch (not a County maintained ditch) a permit should have been attained. Without that required permit, everyday storm water that is discharged from "the Site" is a separate Clean Water Act violation.

Additionally, Melvin B. Stucke and/or Stucke Family Partnership and/or Mark J. Stucke and/or Mary Ann E. Stucke have installed agricultural subsurface drainage tile on "the Site" diverting surface and subsurface storm waters to Wards' private ditch. Installation of artificial drainage systems was/is to improve the natural waterlogged conditions of wet areas within "the Site". This facilitates the rising crop yields and productive output of the land use. Consequently, the diversion of storm water through subsurface drainage systems has the hydraulic effect of increasing stream velocity of downstream property owners. When the drainage systems eliminate large areas of natural subsurface storage, the storm water is substantially accelerated to the one egress point/outlet expelling into Wards' private ditch.

Jeff McMiller, Supervisor of the Darke County Ditch Maintenance Division oversees the maintenance of levees, drains and drainage ditches under the supervision of Darke County. A ditch is deemed to be under county maintenance when the abutting landowners request and/or agree to allow Darke County to enter onto their property for the purpose of cleaning, dredging, removing debris and maintaining a clear pathway through which storm water can flow. A maintenance tax assessment is proportionately levied onto property owner's real estate taxes to pay for the on-going maintenance. Jeff McMiller confirmed that the ditch which is used as the egress point/outlet of "the Site" drainage systems/grass waterway channels is not under Darke County Ditch Maintenance control. James Surber, Darke County Engineer, has also sworn in an Affidavit (attached) that said ditch is not under Darke County Ditch Maintenance control and is considered a private ditch.

On July 13, 2015, the land-altering activities as conducted by Melvin B. Stucke and/or Stucke Family Partnership and/or Mark J. Stucke and/or Mary Ann E. Stucke directly contributed to the flooding and loss of use of the Wards' home and subsequent damages sustained. Melvin B. Stucke and/or Stucke Family Partnership and/or Mark J. Stucke and/or Mary Ann E. Stucke failed to obtain proper permits when altering the

DINSMORE & SHOHL LLP · LEGAL COUNSEL · www.dinsmore.com

Mr. Mark J. and Mrs. Mary Ann E. Stucke
February 14, 2017
Page 3

natural storm water drainage and waters of the United States. That discharge of storm water is also unreasonable under Ohio law.

Should the above violations continue at the end of the 60-day notice period, the Wards intend to file suit for all past and ongoing violations of the Clean Water Act. Through this action, the Wards intend to secure appropriate relief for violations of the CWA that have occurred on "the Site" during the 21 years prior to the date of this notice letter and for any similar violations that occur after the date of this notice letter. The Wards will seek injunctive and permanent declaratory judgments and the recovery of attorney fees and expenses. All provided for under the CWA. In addition, the Wards will seek to recover their damages under Ohio law in that suit. We are interested in discussing settlement of these claims if you or representatives desire to do so.

Very truly yours,

Timothy D. Hoffman

Enclosures

TDH

cc: Edward A. Dark, Esq.,
Wayne Insurance Group
3873 Cleveland Road
Wooster, OH 4491

Catherine R. McCabe,
Administrator of USEPA
USEPA Headquarters
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N. W.
Mail Code: 1101A
Washington, DC 20460

Robert A. Kaplan
Region V Administrator of USEPA
77 West Jackson Blvd.
Mail Code: R-19J
Chicago, IL 60604-3507

Craig W. Butler, OEPA Director
50 West Town Street
Suite 700
Columbus, OH 43215

Army Corp of Engineers
Regional Office
550 Main Street, Room 10524
Cincinnati, OH 45202

# AUXANO ENVIRONMENTAL LLC.

Growing Solutions for the Environment

September 2, 2016

Dinsmore & Shohl LLP
Timothy D. Hoffman - Legal Counsel
Fifth Third Center
One South Main Street, Suite 1300
Dayton, OH 45402

Re:     Betsy Ward Property

Dear Mr. Hoffman,

Please accept this letter as the preliminary opinion of Auxano Environmental LLC's lead wetland scientist Nichole Lashley about the incident that occurred at the Ward's property on July 13, 2015. The question being assessed is if the grading and drainage activities that have occurred at the Melvin Stucke Farm caused the flooding that occurred at the Ward's home. Auxano's review was to establish if the activities that occurred on the Stucke farm were under regulatory authority and if the measures taken by the Natural Resources Conservation Service (NRCS) office and Mr. Stucke were enough to protect the offsite property owners.

NRCS Information - Stucke Property

Looking at the information that was received from the NRCS office to Ms. Ward (on December 1, 2015) it is clear that the NRCS office did not do its due diligence prior to installing the channels at the Stucke farm.   Under the prior converted croplands (PCC) and/or Swampbuster requirements a "certified" wetland delineation is required to be conducted by the NRCS office prior to the creation of drainage channels. The delineation is required to record if the channels that were being created would have altered any wetlands or changed the natural drainage of the site.   No certification was completed by the NRCS office. Therefore, it is clear through the execution by the NRCS office that this project falls outside of the protections of the PCC and/or swampbusters requirements.

The FOIA information appears to be a Technical Release 55 project which was used by the NRCS office at the time to determine "Urban Hydrology for Small Watersheds." Technical Release 55 (TR-55) presents simplified procedures to calculate storm runoff volume, peak rate of discharge, hydrographs, and storage volumes required for floodwater reservoirs. These procedures are applicable in small watersheds, especially urbanizing watersheds, in the United States. First

issued by Natural Resources Conservation Service (NRCS), formerly the Soil Conservation Service (SCS) in January 1975, TR-55 incorporated SCS procedures.

The information provided by the NRCS office appears to analyze both of the created channels watersheds; the calculations verify that the parabolic channels that were created at the Stucke farm would efficiently flow stormwater discharge during a 2-year storm event. Conversely the project should have avoided an adverse effect downstream and calculations should have been conducted to determine if the post development discharges did not exceed (at the time) current-condition discharges for one or more storm frequencies at specified points along the created channels. It does not look like this process was completed. Therefore, no protections to the downstream owners were considered, nor were time of concentration (TOC) calculations at peak flows conducted to determine the effect of the discharges. The adverse effects of the peak flows might have been caught if a certified engineer (Professional Engineer or Engineer-In-Training) had reviewed the document. Based on the design drawings Paul A. Decker (Certified Engineering Technician) signed the drawings. A Certified Engineering Technician is not qualified to sign off on these types of hydrology assessments in the State of Ohio; only a certified licensed professional engineer.

Regulatory Authority

Since the creation of these channels on Stucke's farm fell outside of the PCC and Swampbusters regulations a US Army Corps of Engineers permit should have been sought by the property owner under the Clean Water Act. Any alteration to a water of the US over a minor impact which at the time was considered 300 linear feet is/was regulated by the ACOE. Since the north created channel was 3700 linear feet and the south created channel was 3300 linear feet meeting at a pinch point at a private ditch (not a County maintained ditch) a permit should have been attained. This type of project would have been considered a major project to the alteration of the Boyd Creek watershed (Boyd Creek flows into the Stillwater River which flow to the Great Miami River which flows to the Ohio River). The headwater to Boyd Creek existed at the eastern edge of the Stucke Farm prior to the alterations in 1994. When the channels were extended it altered the watershed characteristics to Boyd Creek and created headwater channels on the Stucke Farm property.

In addition to the ACOE the Ohio EPA would have also considered the alteration to Boyd Creek a major modification to a water of the State and would have required an individual water certification through the State.

Conclusion

Based on what has been provided to Auxano Environmental LLC. it has been determined that the NRCS office at the time did not do their due diligence to protect the property owners downstream from the Stucke farm. Additionally, the property owner failed to attain proper permitting from the regulatory authorities prior to instillation of the drainage channels.

Sincerely,

Nichole Lashley
Auxano Environmental LLC.

# INTRODUCTION

## Company Profile

Auxano is a small disadvantaged Woman-Owned Small Business (DBE/WBE) certified with the State of Ohio and the Federal Small Business Administration. We also received our Encouraging Diversity, Growth & Equity (**EDGE**) certification through the State of Ohio. We were founded in 2013 by Ms. Nichole Lashley and our offices are located in Lebanon, Ohio. Our DUNS #078857029 and CAGE Code is 6X4D6. Auxano has the following capabilities and can provide the following services:

**Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)**
- Phase I Environmental Site Assessment (ESA) ASTM 1527-13
- Phase II ESA ASTM 1903-11
- Brownfield Redevelopment, Risk Assessments, Engineering and Institutional Controls

**Resource Conservation and Recovery Act (RCRA)**
- Corrective Action Plan and Cessation of Regulated Operations
- Petroleum Sites and UST/AST Removal and Installation

**NEPA Documentation**
- Environmental Assessments
- Environmental Impact Statement
- Finding of No Significant Impact

**National Emissions Standards for Hazardous Air Pollutants**
- ASTM E2356-14 Standard Practice for Comprehensive Building Asbestos Baseline Surveys, Project Design Surveys, and Pre-Construction Surveys
- National Emissions Standard for Hazardous Air Pollutants (NESHAP) Surveys

**EPCRA Documentation and Reporting**
- Hazardous Chemical Storage Reporting (EPA - Tier 2 Submit)
- Local Emergency Planning Committee – Emergency Response Plans
- Toxic Release Inventory Reporting (TRI)

**Human Health and Ecological Risk Assessment**

**Ecological Surveys**
- Macro-invertebrate Identification
- Aquatic Species Identification
- Terrestrial Species Identification
- Invasive Species Monitoring and Identification
- Endangered and Threatened Species

**Watershed Evaluations**
- Waters Delineations
- 401/404 Permitting

- Section 10 Permitting
- NPDES – SWPPP
- Water Quality Evaluations
- Hydrodynamic Water Quality Model
- Rosgen Methods
- Limnology Principals

Auxano's professional staff includes but is not limited to:

- Biologists
- Certified Industrial Hygienist
- Certified Asbestos and Lead Based Paint Assessors
- Ecologists
- Certified Environmental Professionals

Our experienced staff has conducted work throughout the Midwest, Southeast and West Coast of the United States for Federal agencies (U.S. Army Corps of Engineers (including the Louisville District), Air Force, Navy, U.S. National Park Service, U.S. Army, and Air National Guard); local public agencies; county agencies and privet clients.

Auxano currently holds a 2,000,000.00 errors and omission policy along with a 2,000,000.00 aggregate, insurance binder can be provided upon request.

- 1 -

**Nichole Lashley, Owner and Project Manager**

## PROFESSIONAL EXPERTISE:

Ms. Lashley is responsible for the planning, implementation, and execution of environmental service contracts and multiple task orders/projects covering a wide range of environmental disciplines, including compliance, land-use planning, pollution prevention, site investigation/restoration, NEPA planning, and engineering for government clients. Consistently manages 5 - 6 projects/tasks, and all personnel assigned at multiple locations. Provided management oversight to multiple Project Managers and ensures schedules, budgets, and resource levels are committed to efficiently execute technical, quality, safety and deliverables on schedule. Acts as the primary point of contact working with government customers on contract/project matters. Works closely with Regional and State Environmental agencies on plans development and approval, and has established an excellent working relationship with these professional regulators.

In 2004 she was selected for her specialized knowledge of waterway issues by the Dayton Chamber of Commerce in conjunction with the German American Chamber of Commerce of the Midwest to be a participant in the Transatlantic Program. The group which consisted of environmental specialists and young professionals coming from other sectors of industry met in Germany with high-ranking German government officials, entrepreneurs, researchers and members of the Junior Chamber of Commerce Germany to discuss various topics about Germany and global environmental issues. Her focus was on hydroelectric dams, water quality, and the loss of floodplain along highly urbanized cities.

In 2003 she was called upon by the Army Corps of Engineers (ACOE) for her knowledge of water resources in Ohio and was invited aboard the MV Mississippi to meet and give comments to the Mississippi River Commission while it was docked in Cincinnati during its low-water inspection in August. The seven-member commission was appointed by President Bush and confirmed by the US Senate, to advise the chief of engineers and secretary of Army about any issues they discover during their inspection of the lock and dam systems and comments given to them at public/privet meetings. Ohio is of importance because the Ohio River contributes approximately 60% of the water that flows into the lower Mississippi River system.

### Past Performance:

Environmental Site Assessment

- Has seventeen years experience conducting Phase I Environmental Site Assessments (ASTM Standard E-1527-13) of commercial, industrial, agricultural, and residential properties.
- Has fifteen years experience conducted Phase II (ASTM Standard E-1903-11) and III operations in accordance with State and Federal guidelines.
- Phase III remediation for projects utilizing monies allocated from Brownfield Redevelopment funds.

- Michigan Department of Environmental Quality Baseline Environmental Assessments & Section 7a Due Care Plans:
  - City of Portage, MI
  - City of Tawas, MI
  - Shelby Township, MI
  - Taylor, MI
- Ohio EPA Voluntary Action Program Projects
  - New Boston, OH
  - Red Bank Road, OH
  - Woodward Opera House, Mount Vernon, OH
  - Northland Mall, Columbus, OH
- CRO – Oasis Plant, Columbus, OH

## Hazard Evaluations

Conducted the evaluation of 3,256 secondary containment units for all Above Ground Storage Tanks (AST's) at Fort Knox Army Base, Kentucky. The evaluation was conducted to determine if each tank met the compliance of the National Environmental Policy Act (NEPA) document and the Clean Water Act.

## VAP Projects

Ms. Lashley's keystone VAP project is the Woodward Opera House which is on the National Historic Register as the oldest Opera House in Ohio. The site is tied closely with musician Dan Emmett who is known for his world famous song *Dixie*, as well as *Old Dan Tucker* and *Turkey in the Straw*. The site is being restored to its original nineteenth century design by the Woodward Development Corporation. The major stumbling block prior to the restoration of the structure was conducting the asbestos and lead based paint assessment and remediation. A traditional survey and remediation could not be conducted due to the historic nature of some of the media found, (i.e. wall paper, plaster, laminate floor, wood floor) so innovative remedial processes were employed in order to complete the project. The Woodward Development Corporation attained monies from the Clean Ohio Revitalization Fund to remediate the asbestos but it also required the site to go through the VAP process. VAP sites on the National Historic Registry are difficult for the simple fact that everything has to be conducted so that the historic integrity of the material within the structure is not compromised. Restoration was not a fast process. This project started the VAP process in 2003 and was issued its CNS February 11, 2009. Ms. Lashley presented this project at the Ohio Brownfield's Conference in conjunction with the Ohio Department of Development in 2009 under the heading "Trials of Historic Brownfield Sites."

## Wal-Mart

Ms. Lashley currently conducts evaluations of wetland restoration projects for Wal-Mart Stores Inc. The projects that are evaluated have had issues meeting their mitigation goals with the federal and State agencies. Auxano is currently working in Ohio, Indiana, and Pennsylvania with the Huntington, Louisville, and Buffalo Corps of Engineer Districts (respectively). Local entities include Ohio Environmental Protection Agency, Indiana

- 3 -

Department of Environmental Management, and the Pennsylvania Department of Environmental Protection.

Sites that have been identified as not meeting their performance criteria are stringently assessed from a design, hydrology, and classification perspective to determine the root of the issues with meeting mitigation compliance. Once the evaluation is completed recommendations are made to the client to bring the site into compliance. If compliance cannot be met (within the parameters of the permit) or is not feasible then outside mitigation is evaluated.

<u>3C "Quickstart" Rail Projects, Statewide Ohio Department of Transportation</u>

Under NEPA requirements, Ms. Lashley has completed Level 1, Level 2 and Level 3 Ecological Resource Surveys on the 3C Rail ecological survey. The proposed 3C Rail Project would have connected Cleveland, Columbus, and Cincinnati with a high-speed passenger rail system. The completed ecological survey included the identification, classification, and mapping of ecological resources through secondary source information followed by field verification with sub-meter Trimble Geo XH GPS units. Evaluations included wetland delineations in accordance with the Army Corps of Engineers (ACOE) manual, multiple Ohio Rapid Assessment Method (ORAM) evaluations as they relate to wetlands, as well as many Qualitative Habitat Evaluation Index (QHEI) and/or Headwater Habitat Evaluation Index (HHEI) evaluations as they relate to stream quality. Additionally, federal and state listed threatened or endangered species habitats were surveyed, including potential Indiana Bat habitat trees.

<u>CUY-90-Innerbelt Bridge, Cleveland, OH ODOT District 12</u>

Ecological and permit task manager and is involved in applying for, reviewing and coordinating the Ohio EPA 401 permit, ACOE Section 9, 10 and Nationwide 404 permits, ODNR costal consistency and Harbor Master permits. Additionally, Ms. Lashley is responsible for the green bulkhead fish habitat design along the Cuyahoga River and ecological evaluations associated with the project which included but are not limited to threatened and endangered species evaluations and avian evaluations.

<u>Columbus Regional Airport Authority (CRAA) – 410 Acre Wetland Delineation/ Waters Determination</u>

While Ms. Lashley was the staff wetland scientist that conducted a 410 Acre Wetland Delineation/Waters Determination for the CRAA to update their **National Environmental Policy Act (NEPA)** that was set to expire in of August 2008. Ms. Lashley conducted the following tasks in association with the Army Corps of Engineers (ACOE) and Ohio EPA requirements; macro-invertebrate stream evaluation, vegetative biologic community evaluation, wetland delineation in accordance with *The Field Guide for Wetland Delineation: 1987 Corps of Engineers Manual*, Ohio Rapid Assessment Method (ORAM) as it relates to wetlands, and Qualitative Habitat Evaluation Index (QHEI) and/or Headwater Habitat Evaluation Index (HHEI) as it relates to streams. Wetlands and other waters of the U.S. were flagged for ACOE verification and locations were mapped using a Trimble GPS data system. The comprehensive assessment was submitted to the ACOE on behalf of the CRAA for concurrence of findings and issuance of an updated Jurisdictional Determination (JD) letter which is good for five years.

**Education:**

Fairmont High School (1993)

Juniata College; Bachelors of Arts in Environmental Science (5/1997)

Date of Specialized Study: 6/1996

In 1996 Ms. Lashley was selected to travel to Bangladesh to study the flooding effects of the Brahmaputra River. She spent three weeks testing water samples from various areas where the leaching parameters of the soil water interface were causing arsenic contamination to the drinking water supply. Ms. Lashley spent time in Sylhet, Dhaka, and Chittagong meeting with heads of the country and governors/mayors of the regions trying to better understand the extent of the flooding issues and the possible link between that and the drinking water contamination. Upon her return she summarized her findings and submitted them to the American Institute for Bengali studies.

University of Dayton School of Law; First Year Completed (no Degree) (9/1997 to 5/1998)

**Training and Certifications:**

Qualitative Habitat Evaluation Index/Bio-criteria Training – Ohio EPA, 2007
Primary Headwater Evaluation Index-Level 2 Training - Ohio EPA, 2008
Ohio Rapid Assessment Method for Wetlands – Ohio EPA, 2005
Ohio Vegetative Index of Biotic Integrity Training – Ohio EPA, 2009
Waterway Permits Training – ODOT, 2014
Ecological Resources – ODOT, 2014
Categorical Exclusion – ODOT, 2010
Certificate Number 5457 – 38 Hour Army Corp of Engineers Wetland Delineation Training Program
NRCS – Technical Service Provider
29 CFR 1910.120(e) (8) Hazwoper Certification
Current security clearance held: N/A
Highest security clearance held: N/A
Current US Passport: Yes

**Professional organizations:**
Society of American Military Engineers – Kitty Hawk Post
Program Chair

STATE OF OHIO              :

                          : SS.

COUNTY OF DARKE           :

## AFFIDAVIT
ORC 5301.252 (B)(4)(5)

**BEFORE ME**, the undersigned James Surber, personally appeared on this _3rd_ day of _March_, 2016, and after having been first duly sworn, on his oath, deposes and says as follows:

1.    That he is the Darke County Engineer of Darke County, Ohio.

2.    That he is knowledgeable of the 8.5 acres of land more commonly known as the Louanna M. Brown Subdivision located in Section 22, Town 12, Range 2 E, of Greenville Township, more fully described on the Plat Map recorded in Plat Book 6, Page 168, of the Darke County Records in the Darke County Recorder's Office, marked as Exhibit A and attached hereto and incorporated herein by reference.

3.    That he has read the real estate description in Exhibit A.

4.    That an open ditch is located within said Louanna M. Brown Subdivision.

5.    That Louanna M. Brown Subdivision is divided into eight (8) lots.

6.    That said open ditch traverses through and is parts of Lots 3, 4, 5, 7 and 8 according to the lots lines as established by said Plat Map (Exhibit A).

7.    That said open ditch is privately and proportionately owned by the abutting land owners located within the Louanna M. Brown Subdivision, being Lots 3, 4, 5, 7 and 8.

8.    That said open ditch is under no permanent maintenance and that the County has no responsibility toward said ditch.

Melissa M Grant
Notary Public, State of Ohio
My Commission Expires 6-10-2018

JAMES SURBER

Sworn to and subscribed before me by James Surber this _3rd_ day of _March_, 2016.

NOTARY PUBLIC

THE LOUANNA M. BROWN SUBDIVISION
OF 8.50 A. (8.285 A. THIS SURVEY).
IN SEC. 22, T12, R2E, GREENVILLE TWP.
DARKE COUNTY, OHIO.

## DESCRIPTION.

BEING PART OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SECTION 22, T12, R2E. COMMENCING ON THE WEST LINE OF THE NORTH HALF OF SAID SECTION 22 AT A POINT 3 CHAINS 38.7 LINKS NORTH OF THE SOUTHWEST CORNER OF THE NORTH HALF OF SAID NORTHWEST QUARTER SECTION; THENCE N° 30' E ALONG THE WEST LINE OF SAID QUARTER SECTION A DISTANCE OF 11.86 CHAINS TO A CONCRETE POST AT THE S.W. CORNER OF THE SCHOOL LOT AND BEING 21 RODS SOUTH OF THE NORTHWEST CORNER OF SAID SECTION 22; THENCE EAST PARALLEL WITH THE NORTH LINE OF THE SCHOOL LOT 4.83 CHAINS MORE OR LESS TO THE CENTER OF THE GREENVILLE AND FORT RECOVERY PIKE (NOW S.R. #491); THENCE SOUTH 26° 44' E ON AND ALONG THE CENTERLINE OF SAID HIGHWAY TO A POINT 3 CHAINS 81 LINKS N26° 44' W FROM THE INTERSECTION OF THE CENTERLINE OF SAID HIGHWAY A 0 THE SOUTH LINE OF THE NORTH HALF OF SAID NORTHWEST QUARTER SECTION; THENCE N89° 30' W PARALLEL WITH THE SOUTH LINE OF THE NORTH HALF OF SAID QUARTER SECTION 16 CHAINS AND 20 LINKS TO THE PLACE OF BEGINNING AND CONTAINING 8.5 A. MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS AND EASEMENTS, RECORDED IN DEED BOOK 289, PAGE 156 OF THE DEED RECORDS OF DARKE COUNTY, OHIO.

## RESTRICTIONS.

1 NO BUILDING SHALL BE CONSTRUCTED ON ANY LOT UNLESS THE SAME HAS AT LEAST 900 SQUARE FEET OF LIVING SPACE ON THE GROUND FLOOR AND EXCLUSIVE OF GARAGE.

2 ALL BUILDINGS SHALL BE SET ACCORDING TO CODE

3 NO TRAILER OR BASEMENT HOUSES SHALL BE CONSTRUCTED, PLACED OR SUFFERED TO REMAIN ON SAID PREMISES. THIS RESTRICTION DOES NOT APPLY TO THE CONSTRUCTION OF THE USUAL AND ORDINARY BASEMENT UNDER A DWELLING HOUSE.

4 NO SPITE FENCES, BILLBOARDS, SIGNS OR ADVERTISING DEVICES OF ANY KIND OTHER THAN FOR SALE OR RENT SHALL BE ERECTED, PLACED OR SUFFERED TO REMAIN ON SAID PREMISES.

5 SEWAGE DISPOSAL SYSTEMS TO BE INDIVIDUAL ON EACH LOT WITH APPROVAL BY THE HEALTH DEPARTMENT.

6 NO TRASH, BRUSH OR GARBAGE TO BE LEFT IN SAID LOTS.

## RATIFICATION.

WE, THE UNDERSIGNED, BEING ALL THE OWNERS OF THE LAND SHOWN ON THIS PLAT, DO HEREBY CONSENT TO THE EXECUTION OF SAID PLAT AND TO THE DEDICATION OF STREETS AS SHOWN HEREON TO THE PUBLIC USE FOREVER.

WITNESS:

STATE OF OHIO, SS.
DARKE COUNTY, OHIO.

BE IT REMEMBERED THAT ON THIS ___ DAY OF _____ 1965, BEFORE ME THE SUBSCRIBER A NOTARY PUBLIC IN AND FOR SAID STATE PERSONALLY APPEARED THE ABOVE NAMED LOUANNA M. BROWN AND HERMAN L. BROWN, HER HUSBAND AND ACKNOWLEDGED THE SIGNING THEREOF TO BE THEIR VOLUNTARY ACT AND DEED FOR THE USES AND PURPOSES THEREIN MENTIONED.

IN WITNESS WHEREOF I HAVE HEREUNTO SUBSCRIBED MY NAME AND AFFIXED MY OFFICIAL SEAL ON THE DAY AND YEAR AFORESAID

NOTARY PUBLIC IN AND FOR DARKE COUNTY, OHIO.

EVELYN L. BIGLE Notary Public In And For Darke County, Ohio My Commission Expires Dec. 1, 200_

3054

FILED

APPROVAL

SECY. TO GREENVILLE PLANNING BOARD:
DATE:

CITY SERVICE DIRECTOR

DATE:

DARKE COUNTY HEALTH COMMISSIONER
DATE:

GREENVILLE TOWNSHIP ZONING COMMISSION
DATE:

DARKE COUNTY COMMISSIONERS

THIS INSTRUMENT WAS PREPARED BY:

I DO HEREBY CERTIFY THIS PLAT TO BE TRUE FROM SURVEY THIS 20TH DAY OF AUGUST 1965

REGISTERED SURVEYOR No. 1846

THAT ALL REQUIREMENTS BE THOSE OF GREENVILLE AND DARKE TWP. SUBDIVISION RULES HAVE BEEN COMPLIED WITH.

SCALE 1" = 50'

SECTION LINE 2
BRADFORD ROAD
CHILDRENS HOME ROAD.

STATE MON.

SCHOOL LOT 1.27A
MABLE MOORE HARDEN 399-359
ZONE COMMERCIAL

CONC POST

EAST 15 R. (247.5)

EAST 4.83 CH (318.78±) TO ¢ (BY DEED)
15' UTILITY EASEMENT

LOT 1
0.804 A

BUILDING LINES

N89° 41' W 303.44

LOUANNA M BROWN
100 OA
255-361

2
1.177 A.

N89° 41' W 380.86

3
1.394 A

CIRCLE

4
0.779 A

5
0.843 A.

6
0.843 A

7
0.862 A

8
0.523 A

BUILDING LINES

15' UTILITY EASEMENT

ZONE RESIDENTIAL

GREENVILLE

FORT RECOVERY PIKE

LOUANNA M. BROWN
3.75 A
255-361

ZONE RESIDENTIAL

DENOTES IRON PINS

### AREA

| LOT | |
|---|---|
| 1 | .804 A. |
| 2 | 1.177 |
| 3 | 1.394 |
| 4 | .779 |
| 5 | .843 |
| 6 | .840 |
| 7 | .842 |
| 8 | .513 |
| ROADS | 1.550 |
| TOTAL | 8.285 A |