# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| AARON WARD, et al., | : | Case No. 3:18-cv-00263 |
| Plaintiffs, | : | Judge Thomas M. Rose |
| v. | : | |
| MARK J. STUCKE, et al., | : | |
| Defendants. | : | |

---

## ENTRY AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 15)

---

This case is before the Court on the Motion for Judgment on the Pleadings Seeking Dismissal of Count One of Plaintiffs' First Amended Complaint and Dismissal of Counts II and III for Lack of Jurisdiction (Doc. 15) (the "Motion") of Defendants Mark J. Stucke and Mary Anne E. Stucke (the "Defendants"), pursuant to Fed. R. Civ. P. 12(c). Specifically, the Defendants move for judgment on the pleadings on (1) Count One of the Amended Complaint ("Violation of the Clean Water Act – Unauthorized discharges of dredged and/or fill materials") on various grounds, and (2) Counts Two and Three of the Amended Complaint (state law claims for Private Nuisance and Trespass, respectively) on the ground that this Court should decline to exercise supplemental jurisdiction over those two claims. Plaintiffs Aaron Ward and Betsy Ward (the "Plaintiffs") filed a memorandum in opposition to the Motion (Doc. 17) (the "Opposition"), and the Defendants filed a reply memorandum in support of the Motion (Doc. 18) (the "Reply"). The motion is fully briefed and ripe for review. (Docs. 15, 17, 18.) For the reasons discussed below, the Court **DENIES** the Motion.

# I.    SUMMARIZED ALLEGATIONS FROM THE AMENDED COMPLAINT

Plaintiffs bring a citizen suit under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (the "CWA"), pursuant to 33 U.S.C. § 1365.  In Count One of the Amended Complaint, they claim that the Defendants violated 33 U.S.C. § 1311 and 33 U.S.C. § 1344 (i.e., Sections 301 and 404 of the CWA) by making unauthorized discharges of dredged and/or fill material into waters of the United States.  (*See* Am. Cmplt. ¶¶ 74-86.)   In addition, Plaintiffs bring two state law claims:  private nuisance and trespass.  (*Id*. at ¶¶ 87-108.)

The following four paragraphs are an abbreviated summary of the allegations in the Amended Complaint (Doc. 13).  The Court stresses that the following are merely <u>allegations</u> and recognizes that Defendants disagree with many of Plaintiffs' allegations.  The case is still at a very early stage and (to the Court's knowledge) no formal discovery has taken place, the parties have not held a Rule 26(f) conference, and the Court has not scheduled an initial pretrial conference with the parties.

On or about July 13, 2015, a heavy rain event occurred that caused the Plaintiffs' land to flood.  Plaintiffs were forced to hastily evacuate their home, wading through chest-high water with their three children in order to escape.  Their home was completely destroyed, along with personal belongings in the home and two cars parked inside the garage.  Plaintiffs could not live in their home for the subsequent eight months.  However, they were able to make their home habitable again and live there now.

Plaintiffs' property has continued to flood during storms and heavy rain events.  Such flooding—as well as the flooding that occurred on or about July 13, 2015—is alleged to be the result of the Defendants' earlier land-altering activities that changed the flow of surface and subsurface water.  Those alleged land-altering activities included that (1) sometime in the 1990s,

Defendants and/or their predecessor in ownership installed two grassed waterway channels on Defendants' land that collect and divert water to a private ditch and stream running along Plaintiffs' property that are part of the headwaters of Boyd Creek[1]; and (2) sometime in the fall of 2014, Defendants engaged in a construction project involving excavating some of their land (including some wetland areas) and installing drainage tile throughout their land to drain the natural waterlogged conditions. The drainage tiles alter the natural wet or waterlogged conditions on the land, and they divert infiltrated surface waters and subsurface waters into the private ditch and stream. The land-altering activities involved Defendants' use of mechanized land-clearing equipment or earth moving equipment to discharge dredged material or fill material in and around the land.

Defendants' land is adjacent to Plaintiffs' property and residence. However, from the time that Plaintiffs moved into their residence in 2004 until July 13, 2015, they had never experienced flooding on their property. Prior to Defendants' excavation of the wetland areas and installation of the drainage tiles, those areas would collect and hold water during significant rain events, helping to moderate flood flows and acting as a biological filter prior to water flowing downstream into Boyd Creek.

Neither the Defendants nor their predecessors ever obtained authorization from the Army Corps of Engineers, the United States Environmental Protection Agency, or the Ohio Environmental Protection Agency to install the two grassed waterway channels. Also, Defendants' land-altering activities were not authorized by a permit or authorization issued by the Corps or any other agency pursuant to Section 404(a) of the CWA (33 U.S.C. § 1344(a)). In addition to violating the federal CWA, Plaintiffs claim that Defendants altered their land in an

---

[1] Boyd Creek is alleged to be a tributary of the Stillwater River, which flows into the Great Miami River, which flows into the Ohio River.

unreasonable manner that caused—and will continue to cause—harm to Plaintiffs' health and property, thus constituting a continuing private nuisance and continuing trespass under Ohio law. Dirt, silt, biological material, road runoff, and other pollutants within discharges from Defendants' land have entered and remain on Plaintiffs' property.

## II.    <u>STANDARD OF REVIEW</u>

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Federal Rules of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). The Sixth Circuit "has applied the now familiar pleadings requirements in *Twombly* and *Iqbal* to Rule 12(c) motions." *Patterson v. Novartis Pharms. Corp.*, 451 F. App'x 495, 497 (6th Cir. 2011).

When a party moves for judgment on the pleadings, "[a]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment as a matter of law." *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (internal quotation marks omitted). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Case Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

"To survive a Rule 12(c) motion, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Hindel*, 875 F.3d at 346-47 (internal quotation marks omitted), *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal quotation marks omitted)). "[T]he plaintiff must provide the grounds for its entitlement to relief, and that 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal citation omitted), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff falls short if [the plaintiff] pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct.'" *Id.*, *quoting Iqbal*, 556 U.S. at 678-79. *See also Twombly*, 550 U.S. at 557 (a complaint will not withstand a motion to dismiss if it offers only "naked assertion[s]" without "further factual enhancement").

In addressing a motion for judgment on the pleadings, a court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the complaint and the answer); Fed. R. Civ P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Although allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, a court may also take into account "matters of public record, orders, [and] items appearing in the record of the case." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). Additionally, a court may consider exhibits attached to a motion for judgment on the pleadings "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dept. of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018).

## III.    ANALYSIS

In support of their Motion, Defendants make five arguments for why Plaintiffs' CWA

claim fails: "(1) the installation of the drain tiles and surface drains does not amount to a 'discharge'; (2) the dredged or fill material exemption pursuant to 33 [U.S.C.] § 1344(f) applies; (3) the 'agricultural stormwater discharge' exemption under 33 [U.S.C.] § 1362(14) applies; (4) the 'waters of the United States,' as described in 33 [U.S.C.] § 1362(7) are not implicated here; and (5) the CWA does not regulate increased volume or rate of discharge." (Doc. 15 at PAGEID # 183.) After setting forth some background regarding the CWA, the Court will address each of these arguments.

Defendants also argue that, if this Court dismisses the federal CWA claim, then it should decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims. Given that the Court does not dismiss the federal CWA claim, it will not entertain at this time Defendants' invitation to decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims.

## A. Background on the Clean Water Act and Requirements to Plead a Viable Citizen Suit Under the Act.

As the Sixth Circuit recently explained, "Congress passed the CWA in 1972 with the stated purpose of 'restor[ing] and maintain[ing] the … Nation's waters.'" *Ky. Waterways All. v. Ky. Utils. Co.*, 905 F.3d 925, 928 (6th Cir. 2018), *quoting* 33 U.S.C. § 1251(a). "To promote that goal, the CWA forbids all unpermitted polluting of navigable waters." *Id.*, *citing* 33 U.S.C. § 1311(a), 1342(a).

Under 33 U.S.C. § 1311(a) (i.e., Section 301 of the CWA), "the discharge of any pollutant by any person" is unlawful, except in compliance with various provisions in the CWA—including provisions that provide for the issuance of permits pursuant to the statute's National Pollutant Discharge Elimination System ("NPDES"). 33 U.S.C. 1311(a) ("Except as in compliance with this Section and [various other sections] of this Act, the discharge of any pollutant by any person shall be unlawful."); *Ky. Waterways All.*, 905 F.3d at 928. The CWA defines "discharge of a

pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. 1362(12)(A). The Court's analysis below delves more deeply into the meaning of the embedded terms "pollutant," "navigable waters," and "point source."

A viable CWA claim under 33 U.S.C. § 1311 requires that (1) a pollutant (2) was added (3) to navigable waters (4) from a point source (5) by a person. 33 U.S.C. §§ 1311(a), 1362(6), 1362(7), 1362(12), 1362(14), 1362(16). *See also Ky. Waterways All.*, 905 F.3d at 932; *Tenn. Clean Water Network v. TVA*, 905 F.3d 436, 439 (6th Cir. 2018); *U.S. v. Cundiff*, 555 F.3d 200, 213 (6th Cir. 2009). The Motion questions whether the Amended Complaint adequately pleads some of these elements, whether certain exemptions or exceptions to liability apply here, and the CWA's applicability.

### B. The Amended Complaint Implicates "Navigable Waters" under the CWA.

The Court will first address Defendants' fourth argument: that "waters of the United States" (i.e., "navigable waters") are not implicated here. (Doc. 15 at PAGEID # 190-192.) As shown above, a "discharge of a pollutant" under the CWA requires the "addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12) (emphasis added). As the Sixth Circuit has pointed out, "federal regulation under the CWA only extends to pollutants discharged into navigable waters, 33 U.S.C. § 1362(12), leaving the states to regulate all pollution of non-navigable waters." *Ky. Waterways All.*, 905 F.3d at 929.

#### (1) Scope of "navigable waters"

"Navigable waters are broadly defined as 'the waters of the United States.'" *Ky. Waterways All.*, 905 F.3d at 928, *quoting* 33 U.S.C. § 1362(7). The Supreme Court has recognized that "Congress evidently intended to repudiate limits that had been placed on federal regulation by earlier water pollution control statutes and to exercise its powers under the Commerce Clause to regulate at least some waters that would not be deemed 'navigable' under the classical

understanding of that term." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133 (1985). In other words, water can fall within the CWA that is not actually navigable in fact. *Cundiff*, 555 F.3d at 206.

The Supreme Court in *Rapanos v. United States*, 547 U.S. 715 (2006) addressed what constitutes "navigable waters" in the context of wetlands that are adjacent to non-navigable tributaries of traditional navigable waters. That is the same alleged situation presented here. Unfortunately, *Rapanos* has no single majority opinion. Instead, the Supreme Court fractured into a four-Justice plurality (opinion written by Justice Scalia), a four-Justice dissent (opinion written by Justice Stevens), and a one-Justice concurrence-in-judgment (opinion written by Justice Kennedy that no one else joined). *Rapanos*, 547 U.S. 715.

As summarized by the Sixth Circuit, in *Rapanos*, "[t]he four-Justice plurality interpreted the Act to cover 'relatively permanent, standing, or continuously flowing bodies of water,' that are connected to traditional navigable waters, as well as wetlands with a continuous surface connection to such water bodies." *Cundiff*, 555 F.3d at 207 (internal citations omitted). Justice Kennedy, however, "interpreted the term ['navigable waters'] to cover wetlands that possess a significant nexus to waters that are or were navigable in fact or that could reasonably be so made." *Id.* (internal citations and quotation marks omitted). Justice Kennedy explained that:

> "wetlands possess the requisite nexus and thus come within the statutory phrase 'navigable waters,' if the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.' When, in contrast, wetlands' effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the statutory term 'navigable waters.'"

*Rapanos*, 547 U.S. at 780. Finally, in the view of the four-Justice dissent, "wetlands adjacent to tributaries of traditionally navigable waters" fall within the term "navigable waters" under the CWA. *Id.* at 788, 795 n.4, 807. The dissent stated that the "significant nexus" referenced by

Justice Kennedy (and earlier Supreme Court opinions) "is categorically satisfied as to wetlands adjacent to navigable waters or their tributaries." *Id*. at 807.

**(2) Controlling opinion from *Raponos* for purposes of the issue presented**

"[T]here is quite little common ground [in *Rapanos*] between Justice Kennedy's and the plurality's conceptions of jurisdiction under the Act, and both flatly reject the other's view." *Cundiff*, 555 F.3d at 210. In *Cundiff*, the Sixth Circuit stated that it "[f]ortunately" did not have to decide at that time which opinion from *Rapanos* controls in future cases, and it declined to do so.[2] *Id.* at 208. This was because the Sixth Circuit found that, under the facts in *Cundiff*, "jurisdiction is proper under both Justice Kennedy's and the plurality's tests (and thus also the dissent's)." *Id.* at 210. Unfortunately for this Court, this case does not present the same situation and more straightforward solution, as will be shown below.

However, the Sixth Circuit did provide some guidance in *Cundiff*. First, it noted that the dissenting opinion in *Rapanos* offered its view that "all four Justices who have joined this [dissenting] opinion would uphold … jurisdiction … in all other cases in which <u>either</u> the plurality's or Justice Kennedy's test is satisfied." *Rapanos*, 547 U.S. at 810 (emphasis added). The dissenters added that they "assume that Justice Kennedy's approach will be controlling in most cases because it treats more of the Nation's waters as within the Corps' jurisdiction, but in the unlikely event that the plurality's test is met but Justice Kennedy's is not, courts should also uphold the Corps' jurisdiction. In sum, in these and future cases the United States may elect to prove jurisdiction under either test." *Id*. at 810 n. 14.[3]

---

[2] To this Court's knowledge, despite numerous searches, the Sixth Circuit Court of Appeals has still not decided the issue.

[3] The Sixth Circuit in *Cundiff* alluded to that "unlikely event" when it noted that "[a]lthough in most cases in which Justice Kennedy concludes that there is no federal authority he will command five votes (himself plus the four Justices in the *Rapanos* plurality), in other cases Justice Kennedy would vote against federal authority only to be outvoted 8-to-1 (the four dissenting Justices plus the members of the *Rapanos* plurality) because there was a slight surface hydrological connection." *Cundiff*, 555 F.3d at 209-10 (internal quotation marks omitted).

Additionally, *Cundiff* referenced the test from *Marks v. United States*, 430 U.S. 188 (1977), where the Supreme Court instructed that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. at 193. However, the Sixth Circuit quickly noted that "all is not always so rosy" with the *Marks* test and that there are difficulties in determining what "narrowest" means. *Cundiff*, 555 F.3d at 208-09. Although "the concurring opinion that offers the least change to the law" is generally the "narrowest" opinion under the *Marks* test, an opinion can be meaningfully regarded as "narrower" than another "only when one opinion is a logical subset of other, broader opinions." *Id*. at 209 (internal citations and quotation marks omitted). "Where no standard put forth in a concurring opinion is a logical subset of another concurring opinion (or opinions) that, together, would equal five votes, *Marks* breaks down." *Id*. at 209. The Sixth Circuit in *Cundiff* explained that *Rapanos* presents such a breakdown because, as noted above, the plurality opinion and Justice Kennedy's opinion have little common ground and reject the other's view. *Id*. at 209-10.

Thus, in the end, *Cundiff* provides some guidance for determining which *Rapanos* opinion should control, but nothing definitive beyond finding that it is a difficult issue. This Court now steps into that murky water to analyze the allegations in the Amended Complaint.

### (3) Application of *Raponos* to allegations in the Amended Complaint

As in *Raponos*, this Court is asked to consider whether alleged wetlands adjacent to non-navigable tributaries of traditional navigable waters should be considered "navigable waters." At this stage, as plead, the Court disagrees with Defendants' argument that this Court "lacks jurisdiction because this case does not involve 'navigable waters' or the 'waters of the United States.'" (Doc. 15 at PAGEID # 190.) Defendants' analysis in their Motion focuses solely on the

four-Justice plurality opinion in *Rapanos*. (*Id*. at PAGEID # 190-191; Doc. 18 at PAGEID # 221-22.) They point out that the Amended Complaint "lacks any substantive factual allegations to support the proposition that there is has [sic] a 'continuous surface connection' between Defendants' property and Boyd Creek, which, Plaintiffs allege, is connected to the Stillwater River, which is connected to the Great Miami, which is connected to the Ohio River." (Doc. 18 at PAGEID # 222.)

The "continuous surface connection" is a requirement from the four-Justice plurality opinion (only) in *Rapanos*. However, the Court determines that opinion is not controlling in this instance and, therefore, lack of a "continuous surface connection" is not fatal to Plaintiffs' CWA claim. The Court comes to this conclusion by applying all three tests from *Rapanos* to the Amended Complaint's allegations, and then considering the suggestion (referenced above) of the dissent in *Rapanos* and the approaches by other circuit courts of appeal noted in *Cundiff*.

First, this Court looks to Justice Kennedy's test. Under his test, the CWA applies to wetlands that possess a "significant nexus with navigable waters." *Rapanos*, 547 U.S. at 779-80. Such wetlands are "waters of the United States." *Id*. This "significant nexus with navigable waters" exists "if the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.'" *Id*. at 780. However, the nexus does not exist if the "wetlands' effects on water quality are speculative or insubstantial." *Id*. The determination is made on a "case-by-case basis." *Id*. at 779; *Cundiff*, 555 F.3d at 210.

In *Cundiff*, the Sixth Circuit affirmed the district court's determination that Justice Kennedy's test had been met based on the evidence presented. *Cundiff*, 555 F.3d at 210-11. The district court found that the defendants' wetlands had a significant nexus with a navigable-in-fact

river, via a pond and creeks that were tributaries to that navigable-in-fact river. *Id*. The evidence presented included expert testimony that the wetlands "performed significant ecological functions in relation to the" river and two creeks, including (a) temporary and long-term water storage; (b) filtering of acid runoff and sediment; and (c) providing an important habitat for plants and wildlife. *Id*. The district court also found that the defendants' land altering activity (including ditch digging, mechanical clearing of land, and dredging of material) undermined the wetlands' ability to store water that, in turn, affected the frequency and extent of flooding. *Id*.

Perhaps not surprising given the Plaintiffs' frequent citation to *Cundiff* in their Response, the allegations in the Amended Complaint correspond with the analysis in *Cundiff*. Regarding the existence of wetlands and their connection to a "navigable-in-fact" river, the Amended Complaint alleges:

- The construction and installation of the grassed waterway channels altered a wetland area. (Am. Cmplt. at ¶ 39.)

- Prior to installation of the drainage tiles, the property contained wetland areas with pools and swales that "were conducive to growth and development of plant species adapted to life in saturated soils." (*Id*. at ¶¶ 44-45 and its Exhibits 2 and 3.)

- These wetland areas are allegedly "directly adjacent to Boyd Creek and are hydrologically connected to Boyd Creek and the Stillwater River." (*Id*. at ¶ 50.)

- The stream channel (Boyd Creek) is a direct tributary of the Stillwater River, which is a direct tributary of the Great Miami River, which is a direct tributary of the Ohio River. (*Id*. at ¶¶ 36, 55-57.)

- The Stillwater River, the Great Miami River, and the Ohio River are all "navigable waters." (*Id*. at ¶ 57.)

- "Boyd Creek has flowing water for most of the year and is saturated year-round." (*Id*. at ¶36.)

And, regarding the wetlands' effect on the integrity of the other (allegedly) covered waters, the Amended Complaint alleges:

- "The excavation of the wetland areas and installation of the field tile has

additionally modified and altered the existing drainage ditch and stream channel at the headwater of Boyd Creek, a water of the United States." (*Id.* at ¶ 46.)

- "The excavation of the wetland areas and installation of the drainage tile has had the effect of greatly increasing water runoff into the stream channel and headwaters of Boyd Creek, especially during and after rain events, by eliminating large areas of natural water storage and diverting water to the stream and Boyd Creek, and by drying up the land and causing more rapid water runoff from the subject property to the stream channel and Boyd Creek." (*Id.* at ¶ 47.)

- "Prior to the excavation of the wetland areas and the installation of the drainage tiles, the saturated areas of subject property would hold floodwaters and intercept sheet flow across the property, releasing water in a more consistent manner. These areas would also collect and hold water during significant rain events, helping to moderate flood flows and acting as a biological filter prior to filtering downstream into Boyd Creek." (*Id.* at ¶ 49.)

- "The pools and saturated soils and water that were on the site at the subject property significantly affected the chemical, physical, and/or biological integrity of Boyd Creek and the Stillwater River by, *inter alia*, moderating flow volume and serving as a biological filter." (*Id.* at ¶51.)

- The wetland areas "are no longer conducive to growth and development of plant species adapted to life in saturated soils." (*Id.* at ¶ 45.)

Based on these allegations, the Court finds that the Amended Complaint adequately pleads that "the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.'" *Rapanos*, 547 U.S. at 780; *Cundiff*, 555 F.3d at 210-11. As plead, under Justice Kennedy's test, the alleged wetlands in the Amended Complaint have a significant nexus with an alleged navigable-in-fact river (the Stillwater River), via an alleged tributary (Boyd Creek) to that navigable-in-fact river. *Id.* Thus, the Amended Complaint satisfies the test from Justice Kennedy's opinion in *Rapanos*.

Second, the Amended Complaint also satisfies the more lenient "test" from the dissent. As noted above, in the dissent's view, "wetlands adjacent to tributaries of traditionally navigable waters" fall within the term "navigable waters" under the CWA. *Rapanos*, 547 U.S. at 788, 795

n.4, 807.  Again, the Amended Complaint pleads that the alleged wetlands are adjacent to an alleged tributary (Boyd Creek) of an alleged traditionally navigable water (the Stillwater River). (Am. Cmplt. ¶¶ 36, 44-45, 50, 55-57, and its Exhibits 2 and 3.)

Third, the Court agrees with Defendants that the Amended Complaint lacks factual allegations supporting that the wetlands have a "continuous surface connection" with tributaries of the Stillwater River, a requirement under the test in the four-Justice plurality opinion.  *Cundiff*, 555 F.3d at 211-12, *citing Rapanos*, 547 U.S. at 742.  In other words, the Amended Complaint fails the four-Justice plurality's test.  However, that opinion is not controlling in this instance (or at least has not been held or shown to be controlling).  *Cundiff*, 555 F.3d at 288; *Rapanos*, 547 U.S. at 810.

Given that the Amended Complaint's allegations implicate "navigable waters" under the opinions by Justice Kennedy and the dissenters in *Rapanos* (i.e., five of the nine Justices), the Court disagrees with Defendants' argument.  *Id.*  *See also United States v. Osborne*, No. 1:11CV2039, 2012 U.S. Dist. LEXIS 139089, *10 (N.D. Ohio Sept. 27, 2012) (denying motion to dismiss; finding that, "[t]aking the Complaint's factual allegations as true, and applying *Rapanos* and the regulatory definitions and explanations, the Court finds that it is reasonable to draw the inference that the wetlands on the Property at the Great Plains Site are plausibly adjacent to a navigable body of water, and that the nexus between the wetlands and waters at the site, the Grand River and the Mentor Marsh, are hydrologically, chemically and ecologically significant.").  This conclusion corresponds with both the dissent's suggestion referenced above (*see Rapanos*, 547 U.S. at 810) and the approaches by the other circuit courts of appeal referenced in *Cundiff*.  *Cundiff*, 555 F.3d at 208 ("The Ninth Circuit has stated that Justice Kennedy's test applies in most instances, while the Eleventh Circuit has held that the Act's coverage may be established *only* under his test.

By contrast, the First and the Seventh Circuits … have followed Justice Stevens' advice and held that the Act confers jurisdiction whenever *either* Justice Kennedy's or the plurality's test is met.") (emphasis in original; internal citations omitted).

### (4) CWA regulations cited by Defendants

Defendants also point to CWA regulations concerning exemptions to the term "waters of the United States" for groundwater and "stormwater control features constructed to convey, treat, or store stormwater <u>that are created in dry land</u>." 40 C.F.R. § 230.3(o)(2)(vi) (emphasis added). Defendants assert that "[t]he 'grassed waterway channels' and 'drain tiles' plainly fall within these exceptions, as they are constructed for the purpose of conveying stormwater into the drainage ditch." (Doc. 15 at PAGEID # 192.) However, Defendants provide no citation to support that assertion, which would require the Court to consider—in violation of the standard set forth above—an allegation outside of the pleadings. Further, the allegations in the Amended Complaint do not appear to be limited to groundwater, it is not clear from the allegations in the Amended Complaint that all "stormwater control features" were "created in dry land," and paragraph 41 of the Amended Complaint alleges a purpose for the drainage tile that arguably conflicts with Defendants' unsupported assertion. (*See* Am. Cmplt. ¶41 ("The purpose of the drainage tile was to drain the natural water logged conditions that existed on the subject property.").)

Therefore, the Court disagrees with Defendants' fourth argument for dismissing the CWA claim. Based on the above-cited authorities and analysis, the Court finds that the Amended Complaint adequately pleads "navigable waters" to withstand the Motion's attack that this Court lacks jurisdiction over the CWA claim because the case does not involve "navigable waters" ("waters of the United States").

### C. The Amended Complaint Adequately Alleges a Discharge.

The Defendants' first argument is that the CWA claim fails because "it does not involve a

'discharge,' as that term is defined under the Act." (Doc. 15 at PAGEID # 184.) The argument

boils down to the Defendants' assertion that "[t]here can be no 'discharge' in this instance because

there was no 'addition' of dredged or fill material." (*Id*.) As the Defendants point out, and as the

recitation of the elements for a viable CWA claim referenced above show, a pollutant must be

added to navigable waters. (*Id*., citing 33 U.S.C. § 1362(12) (a "discharge of a pollutant," as

required under 33 U.S.C. § 1311(a), requires an "<u>addition</u> of any pollutant to navigable waters

from any point source") (emphasis added)).)

The Defendants cite to *National Wildlife Federation v. Consumers Power Co.*, 862 F.2d

580, 584 (6th Cir. 1988) to argue that "the Sixth Circuit has held that the discharge of pollutants

from one body of water to a contiguous one is not an 'addition' because it does not add a pollutant

from the outside world." (Doc. 15 at PAGEID # 184-85.) Applying that principle, the Defendants

argue that "[i]n this case, there is no pollutant being added from the outside world" because "the

dredging the Plaintiffs refer to involves Defendants burying drain tiles, and placing the excavated

dirt right back where it came from in a short period of time." (*Id*. at PAGEID # 185.)

Plaintiffs direct the Court's attention to the *Cundiff* case that is more analogous factually

than *Consumers Powers* (including that *Cundiff* involved 33 U.S.C. § 1344, not 33 U.S.C. 1342)[4]

and that distinguished *Consumers Power* on grounds that are likewise distinguishable here—

including that *Consumers Power* "was about agency deference to the EPA's interpretation of

'addition.'" *Cundiff*, 555 F.3d at 214 n.8. In *Cundiff*, the Sixth Circuit held that "[a]lthough it is

plausible to read 'addition' as covering only completely foreign materials, that reading is

foreclosed because 'pollutant' is *defined* in the Act to specifically include 'dredged spoil'—the

---

[4] 33 U.S.C. § 1344 involves permits for dredged or fill material. Given that the alleged "pollutant" here is "dredged and/or fill material," it is just such a permit that the Plaintiffs argue the Defendants needed in order to fall under an exception to liability under 33 U.S.C. §§ 1311(a). (*See* Am. Cmplt. ¶¶ 52-53, 59, 78.)

[defendants] would read that term out of the Act." *Id*. at 213 (emphasis in original). The Sixth Circuit noted that "material can be benign in one spot and seriously disruptive to the surrounding ecological system in another." *Id*. "[O]nce you have dug up something, it becomes 'dredged spoil,' a statutory pollutant and a type of material that up until then was not present in the wetlands. It is of no consequence that what is now dredged spoil was previously present on the same property in a less threatening form." *Id*. at 214 (internal quotation marks and citation omitted). The Sixth Circuit held that, when a material is excavated from a wetland, its redeposit in the same wetland can add a pollutant where none had been before. *Id*.

Therefore, the Court disagrees with Defendants' first argument for dismissing the CWA claim.

### D. The "Normal Farming" Exemptions for Discharging Dredged or Fill Material Do Not Bar the CWA Claim as Plead.

The Defendants' second argument is that the CWA's permitting requirements did not apply—and therefore the CWA claim fails—because one or more of the dredged or fill material exemptions to permitting at 33 U.S.C. § 1344(f)(1)(A) or (C) applies. (Doc. 15 at PAGEID # 185-86; Doc. 18 at PAGEID # 217-221.) Section 1344 is titled "Permits for dredged or fill material," and subsections (f)(1)(A) and (C) state the following:

"(f) Non-prohibited discharge of dredged or fill material.
(1) … [T]he discharge of dredged or fill material –
(A) from normal farming, silviculture, and reaching activities such as plowing, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or upland soil and water conservation practices;
…
(C) for the purpose of construction or maintenance of farm or stock ponds or irrigation ditches, or the maintenance of drainage ditches;
…
is not prohibited by or otherwise subject to regulation under this section or section 301(a) or 402 of this Act [i.e., 33 U.S.C. §§ 1311(a), 1342] …. "

Defendants point out that the Amended Complaint recognizes that the Defendants own and

operate their property "primarily for agricultural purposes" and that the "purpose of the drainage tile was to drain the natural water logged conditions that existed on the subject property." (Am. Cmplt. ¶¶ 34, 41.) Defendants then jump to the conclusion—without citation—that the alleged earthmoving activities "are an ordinary part of maintaining and operating a farm, and any discharge resulting from such activities is plainly exempted under" 33 U.S.C. § 1344(f)(1)(A) and (C). (Doc. 15 at PAGEID # 185-86.)

The Amended Complaint also alleges that "Defendants' land altering activities, including the installation of the channels and the field tile, were not conducted as part of an established farming operation." (Am. Cmplt. at ¶79.) Defendants assert that this allegation should be rejected by the Court because it is conclusory; however, it has support in the Amended Complaint when taking all well-pleaded allegations as true. (*See, e.g.,* Am. Cmplt. ¶¶ 39, 41, 47, 58.) Further, throughout their argument, Defendants make factual assertions in support of their position without any citation to the pleadings (and presumably from outside of the pleadings).

While the evidence may eventually show otherwise, at this stage, based on the allegations in the pleadings, the Court cannot say that the exemption(s) in 33 U.S.C. § 1344(f)(1) apply to bar Plaintiffs' CWA claim. *See Envtl. Def. Fund v. Tidwell*, 837 F. Supp. 1344, 1350-52 (E.D.N.C. 1992) (denying motion to dismiss, despite defendant's argument that Section 1344(f) exemptions applied, because "accepting the plaintiff's allegations as true, as the court must in a motion to dismiss," the plaintiff sufficiently alleged the requirements of its CWA claim). The Amended Complaint alleges facts that, if taken as true, do not show that the "normal farming" exemptions apply to the Defendants' activities.

Therefore, the Court disagrees with Defendants' second argument for dismissing the CWA claim.

### E. The 'Agricultural Stormwater Discharge' Exemption Under 33 U.S.C. § 1362(14) Does Not Bar the CWA Claim as Plead.

Defendants' third argument is that the 'agricultural stormwater discharge' exemption under 33 U.S.C. § 1362(14) applies to bar the CWA claim. Defendants explain that this exemption comes from the definition of "point source" in the CWA. As noted above, one of the requirements for a viable CWA claim is that the pollutant be added to navigable waters from a "point source." 33 U.S.C. § 1311(a); 33 U.S.C. § 1362(12); *Ky. Waterways All.*, 905 F.3d at 934 ("the CWA addresses only pollutants that are added '*to* navigable waters *from* any point source'"), *quoting* 33 U.S.C. § 1362(12)(A).

"[T]he CWA draws a line between point-source pollution … and nonpoint-source pollution." *Ky. Waterways All.*, 905 F.3d at 929. "Point-source pollution is subject to the NPDES requirements, and thus, to federal regulation under the CWA. But all other forms of pollution are considered nonpoint-source pollution and are within the regulatory ambit of the states." *Id.* According to the CWA:

> "[t]he term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. <u>This term does not include agricultural storm water discharges</u> and return flows from irrigated agriculture."

33 U.S.C. § 1362(14) (emphasis added).

The problem with Defendants' argument is that it misidentifies the point source discharges alleged in the Amended Complaint. The Amended Complaint alleges that "[t]he mechanized equipment and/or earth-moving equipment used to install the drainage channels and field tile" are the point sources. (Am. Cmplt. ¶77.) It further alleges that the Defendants "used mechanized land-clearing equipment and/or earth moving equipment to discharge dredged and/or fill material

in and around the subject property." (*Id.* at ¶75.)[5]  The alleged discharges in Count One are not

the "discharge[d] surface water, groundwater, and stormwater" (Am. Cmplt. ¶62), but instead are

the "dredge or fill materials" discharged by "earthmoving activities involved in" the construction

of the drainage channels or installation of field tile (Am. Cmplt. ¶¶ 84-85). [6]  This also explains

why Defendants' cited caselaw in support of their argument (none of which is binding on this

Court) is distinguishable and inapposite.  (Doc. 15 at PAGEID # 187-88 (citing caselaw addressing

issue of "precipitation-related" discharges).)

 Earthmoving equipment can be a "point source" under the CWA.  Other courts in the Sixth

Circuit have made this finding,[7] and it is supported by the Sixth Circuit's recent analysis in

*Kentucky Waterways Alliance*[8] regarding what constitutes a "point source."  "[A] point source is a

'discernable, confined and discrete conveyance.'"  *Ky. Waterways All.*, 905 F.3d at 928, *quoting*

33 U.S.C. § 1362(14).  In this context, a conveyance would be something that carries pollutants.

*Id.* at 933 (finding that "[w]hile groundwater may indeed be a 'conveyance' in that it carries

pollutants," groundwater did not meet the other requirements to be a point source).  Citing to

Webster's Third New International Dictionary, the Sixth Circuit defined convey as "[t]o bear from

---

[5] Thus, Defendants are wrong when they argue that "the [Amended Complaint] contains no other allegations by which it can be reasonably construed that the supposed 'discharges' occur in the absence of rain."  (Doc. 15 at PAGEID # 188.)

[6] The Court notes that the connection, if any, between the alleged CWA violation(s) and alleged "[h]arm to the Plaintiffs from the Defendants' unlawful actions" (*see* Am. Cmplt. ¶¶ 62-73)—that is the basis of Plaintiffs' two state law claims—is not readily apparent.  Understandably, this may have caused some of the confusion in Defendants' argument.  *See Informed Citizens United, Inc. v. USX Corp.*, 36 F. Supp. 2d 375, 378-379 (S.D. Tex. 1999) (cited in Plaintiffs' Response; granting defendants' motion for summary judgment and dismissing plaintiff's citizen suit under the CWA where plaintiff did not have standing because it had suffered no injury in fact).  However, the Court finds that the Amended Complaint states a citizen claim under the CWA based on the arguments presented to the Court in the Motion.

[7] *See, e.g., U.S. v. Larkins*, 657 F. Supp. 76, 78 n.2 (W.D. Ky. 1987) ("Earthmoving equipment constitutes a 'point source' … under Section 502(14) of the CWA, 33 U.S.C. § 1362(14).").

[8] In that case, the Sixth Circuit held that "[t]he CWA does not extend liability to pollution that reaches surface waters via groundwater." *Ky. Waterways All.*, 905 F.3d at 928.  The Sixth Circuit in *Ky. Waterways All.* disagreed with the Ninth Circuit's decision in *Hawai'i Wildlife Fund v. Cnty. of Maui*, 886 F.3d 737 (9th Cir. 2018), a case that remains pending before the United States Supreme Court.  *Id.* at 933.  The Supreme Court's decision in *Hawai'i Wildlife Fund* could conceivably impact this case between the Wards and Stuckes.

one place to another" or "[t]o transfer or deliver." *Id.* Earthmoving equipment certainly can be used to convey pollutants—as well meet the definitions provided by the Sixth Circuit for "discernible," "confined," and "discrete" (*id.*)—and is alleged to do so in the Amended Complaint, at least during the points in time when the equipment was installing the drainage channels and field tile. *See* Am. Cmplt. at ¶¶ 41, 52-53, 75, 84-85.

Therefore, the Court disagrees with Defendants' third argument for dismissing the CWA claim. Evidence established in the course of this case may show that the exemption applies to some or perhaps all of discharges attributed to Defendants, but the Amended Complaint states a claim that is not precluded by the "agricultural stormwater discharge" exemption.

### F. The Court Declines to Dismiss the CWA Claim Based on Defendants' Argument that the CWA Does Not Regulate Increased Volume or Rate of Discharge.

Defendants' final argument for dismissal of the CWA claim is that the CWA does not regulate increased volume or rate of discharge. The Court does not disagree with the Defendants that, in reading the Amended Complaint, it appears that the core of the case is "a property damage claim, not a CWA case." (Doc. 15 at PAGEID # 192.) As the Sixth Circuit in *Ky. Waterways All.* summarized, "the CWA … concerns itself with water pollution" (905 F.3d at 929), yet the alleged harm to Plaintiffs appear to be from flooding, not water pollution.[9] (*See* Am. Cmplt. ¶¶ 62-73, 95, 107.) However, Defendants' final argument cites zero legal authority and sets forth no basis to simply dismiss the case because Defendants believe that this case is "Plaintiffs' attempt to create a federal matter out of a state law property damage claim." (Doc. 15 at PAGEID # 192-93.)

Therefore, the Court does not find that the Defendants' fifth argument calls for dismissing the CWA claim. *See also Larkins*, 657 F. Supp. at 78 n.2 ("[I]f the [defendants'] property

---

[9] The Court notes that the Amended Complaint states that Plaintiffs seek "declaratory and injunctive relief, the assessment of penalties, and an award of litigation costs and fees" to address the Defendants' alleged violation(s) of the CWA. (Am. Cmplt. ¶ 1.)

contained wetlands, the use of earthmoving equipment to construct earthen dikes and levees thereon constituted a discharge of pollutants into waters of the United States, an act prohibited without a permit unless statutorily exempted from the Corps' control. … [I]f [defendants'] property contained wetlands, and if construction of dikes and levees thereon does not qualify for a permit exemption, the [defendants] are liable for violations of the CWA.").

## IV.   <u>CONCLUSION</u>

Based on the arguments presented to the Court,[10] and in accordance with the standard set forth above for ruling on a motion for judgment on the pleadings, the Court denies the Motion. The Court stresses that its decision is based on the allegations in the pleadings and that it is not making any decision regarding whether the CWA claim will or will not withstand any subsequent motion practice, what relief Plaintiffs would be entitled to if Plaintiffs were to be ultimately successful on their CWA claim,[11] or whether the Court would continue to exercise supplemental jurisdiction over the Plaintiffs' two state law claims.

For the reasons stated above, the Court **DENIES** "Defendants' Motion for Judgment on the Pleadings Seeking Dismissal of Count One of Plaintiffs' First Amended Complaint and Dismissal of Counts II and III for Lack of Jurisdiction" (Doc. 15).

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, July 24, 2019.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[10] It is not the Court's job to research and construct arguments for the parties.

[11] *See, e.g., U.S. v. Bay-Houston Towing Co.*, 197 F. Supp. 2d 788, 791 (E.D. Mich. 2002) (declining to assess any civil penalty against defendant following judgment in favor of government on claims including that defendant had violated the CWA by discharging dredged or fill material into wetlands without a permit under § 404 of the CWA).