**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| AARON WARD, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:18-cv-263 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| MARK J. STUCKE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING, IN PART, DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. NO. 41); GRANTING SUMMARY
JUDGMENT FOR DEFENDANTS ON COUNT 1; DECLINING TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER COUNTS 2 & 3 AND, THEREFORE,
DISMISSING THE REMAINING CLAIMS WITHOUT PREJUDICE TO
REFILING IN STATE COURT; AND TERMINATING THE CASE**

---

This case involves a citizen's suit under the Clean Water Act, 33 U.S.C. § 1251 - 1388 (the "CWA"), pursuant to 33 U.S.C. § 1365.  Plaintiffs Aaron Ward and Betsy Ward (the "Wards" or "Plaintiffs") bring three claims against their neighbors, Defendants Mark J. Stucke and Mary Ann E. Stucke (the "Stuckes" or "Defendants"): (1) unauthorized discharges of dredged and/or fill materials, in violation of 33 U.S.C. § 1311 and 33 U.S.C. § 1344 (i.e., Sections 301 and 404 of the CWA); (2) private nuisance; and (3) trespass.  (Doc. No. 13.)

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. No. 41) (the "Motion").  In the Motion, the Stuckes move for an order granting summary judgment on all claims against them, pursuant to Federal Rule of Civil Procedure 56.  In response, the Wards argue that the Court must fully deny the Motion because genuine issues of material fact remain on all claims. As explained below, the Court finds that the Stuckes are entitled to summary judgment on the CWA claim (Count 1) because the claim is only for past violations.  *Gwaltney of Smithfield, Ltd.*

1

*v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 64, 108 S. Ct. 376, 98 L. Ed. 2d 306 (1987) (the CWA "does not permit citizen suits for wholly past violations"). The Wards' remedy, if any, is not grounded in the CWA in federal court. The Court declines to exercise supplemental jurisdiction over the remaining claims.

Therefore, the Court **GRANTS IN PART** the Motion; grants summary judgment to the Stuckes on Count 1 of the First Amended Complaint (the "Complaint"); declines to exercise supplemental jurisdiction over Counts 2 and 3 and, therefore, dismisses the remaining claims without prejudice to refiling in state court; and orders the Clerk of Court to terminate this action from the docket of the United States District Court for the Southern District of Ohio.

## I. BACKGROUND [1]

### A. The Properties, Surrounding Waters, and Earth-Moving Activities

The Stuckes' property consists of approximately 191 acres of field used primarily for agricultural purposes. (Doc. No. 13 at PageID 122; *see also* Doc. No. 41-1 (Aff. of Mark Stucke) at PageID 329.) The Stuckes' property is west of, and adjacent to, the Wards' property and residence in Darke County, Ohio. (Doc. No. 13 at PageID 122, 125; Doc. No. 41 at PageID 309.) There is a stream channel on the east end of the Stuckes' property. (Doc. No. 43-4 (Aff. of Pls.' expert) at PageID 508.) That channel is now the start of the headwaters of Boyd Creek. (*Id.* at PageID 508-09.) The channel and the rest of Boyd Creek run for approximately 3.3 miles before emptying into the Stillwater River, which runs into the Great Miami River, which runs into the Ohio River. (*Id.* at PageID 510.)

Before the year 2000, the prior owners of the Stucke property installed two grassed

---

[1] For purposes of resolving the Motion, the recitation in the "Background" section includes undisputed facts and otherwise assumes the evidence of the non-moving party as true and draws all reasonable inferences in the nonmoving party's favor, as is appropriate at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014).

waterway channels on the property. (Doc. No. 43-4 at PageID 508; Doc. No. 41-1 at PageID 329.) The channels collect and divert surface runoff to the stream channel on the east end of the Stucke property. (*Id.*) In 1984, 2006, and 2011, the Stuckes or their predecessors in ownership installed drainage tiles on the property. (Doc. No. 43-7 at PageID 655-56.) In the fall of 2014, the Stuckes engaged in excavation of their property and installed field drainage tiles throughout the property, diverting water to Boyd Creek.[2] (Doc. No. 43-4 at PageID 509.) There is no evidence that either the Stuckes or their predecessors in ownership obtained a CWA section 404 permit.

### B. Flooding

On or about July 13, 2015, a heavy rain event occurred and the stormwater, groundwater, and surface water discharges from the Stucke property overflowed and flooded the stream channel, in turn flooding the Ward property and other nearby properties. (Doc. No. 13 at PageID 130; *see also* Doc. No. 41-1 at PageID 329.) The Wards' home was destroyed, along with the personal belongings in their home and on their property. (Doc. No. 13 at PageID 130.) Prior to July 13, 2015, the Wards had never experienced flooding or damages related to flooding in their home or on their property since they moved there in 2004. (*Id.* at PageID 125.)

As a result of the above-referenced excavation activities and installation of field drainage tiles, the stream channel abutting the Wards' property has flooded and continues to experience damages related to flooding, causing severe damage to the Wards' home and property. (Doc. No. 43-4 at PageID 509.) The Wards are experiencing flood events near their property on a more frequent basis. (Doc. No. 43-6 (Pls.' expert's rebuttal report).)

---

[2] The Stuckes assert that installation of drainage tiles never took place in 2014. (*See* Doc. No. 41-1 at PageID 329 (Mark Stucke stating that, "[i]n 2006 and 2011 I placed 4 inch and 6 inch perforated plastic drain piping in my farm land"). As shown below, the outcome and analysis of this order is unaffected by whether installation of drainage tiles took place in 2014 or not. It is immaterial, and the Court will assume the truth of the Wards' evidence.

### C. **Notice, Complaint, and Current Motion**

On February 14, 2017, prior to commencement of this lawsuit, the Wards gave notice of the citizen suit violations alleged in the Complaint in a letter addressed to the Stuckes, the Army Corp of Engineers, the United States Environmental Protection Agency (USEPA), and the Ohio Environmental Protection Agency (OEPA).  (Doc. No. 13 at PageID 121; Doc. No. 13-1 at PageID 141-43.)  It is undisputed that no governmental agency has taken any enforcement action, even after receiving that notice.  (*See* Doc. No. 41 at PageID 313-14; Doc. No. 43-1 at PageID 424.)

After more than 60 days had passed since giving notice, the Wards filed this action on August 6, 2018.  (Doc. No. 1.)  They amended their complaint on November 20, 2018.  (Doc. No. 13.)  On June 9, 2021, following the close of discovery, the Stuckes filed the Motion.  (Doc. No. 41.)  The Wards filed a Response in opposition to the Motion (Doc. No. 43), and the Stuckes filed a Reply to that Response (Doc. No. 44).  The Motion is fully briefed and ripe for review.

## II.  **LEGAL STANDARDS FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id.* at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There

must be evidence on which the jury could reasonably find for the plaintiff." *Id*.  The inquiry, then, is "whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict.  *Id*.

## III. <u>ANALYSIS</u>

The Stuckes make five arguments for why they are entitled to summary judgment on the CWA claim: (1) it does not implicate "navigable waters" or "waters of the United States"; (2) it seeks to impose liability only for past violations—which is impermissible for citizen's suits; (3) it is time-barred; (4) it seeks to impose liability on the wrong parties; and (5) the farming exception under 33 U.S.C. § 1344(f)(1)(C) applies to preclude the claim.  (Doc. No. 41 at PageID 308.)  The Stuckes also make three arguments regarding the state law claims: (1) the Court should decline to exercise supplemental jurisdiction; (2) those claims are time-barred; and (3) there is no evidence that any act by Defendants caused a nuisance or trespass.  (*Id.* at PageID 323-27.)  As shown in the analysis below, the Court only addresses the Stuckes' second argument regarding the CWA claim because it is dispositive, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### A. <u>Violation of the Clean Water Act (Count 1)</u>

The first count in the Complaint is titled: "Unauthorized discharges of dredged and/or fill materials."  (Doc. No. 13 at PageID 132.)  The Wards bring that claim under the CWA, alleging violations of Sections 301 (Effluent limitations) and 404 (Permits for dredged or fill material) of that statute.  (*Id.* at PageID 132-33.)

### (1) <u>The CWA's purpose and claims under 33 U.S.C. § 1311</u>

Congress' purpose in passing the CWA was to "'restore and maintain the … integrity of the Nation's waters.'"  *Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1468, 206 L. Ed. 2d 640 (2020) (quoting 33 U.S.C. § 1251).  The Act "broadly states that (with certain

exceptions) 'the discharge of any pollutant by any person' without an appropriate permit 'shall be unlawful.'" *Id.* at 1469 (quoting 33 U.S.C. § 1311, i.e., section 301 of the CWA). Regarding permitting, 33 U.S.C. § 1344(a) (i.e., section 404(a) of the CWA) "authorizes the Secretary of the Army (through the United States Army Corps of Engineers), or a state with an approved program, to issue permits for the discharge of dredged or fill material into the navigable waters at specified disposal sites." *U.S. v. Cundiff*, 555 F.3d 200, 206 (6th Cir. 2009) (internal quotation marks omitted). Here, it is undisputed that the Stuckes did not receive a permit.

The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). Thus, a viable CWA claim under 33 U.S.C. § 1311 requires (1) an addition (2) of a pollutant (3) to navigable waters (4) from a point source (5) by a person. 33 U.S.C. §§ 1311(a), 1362(6), 1362(7), 1362(12), 1362(14), 1362(16); *see also Cundiff*, 555 F.3d at 213. The terms "pollutant," "navigable waters," and "point source" are all specifically defined in the CWA. *See* 33 U.S.C. §§ 1362(6), 1362(7), 1362(14). The term "pollutant" is defined in the Act to include, among other things, "dredged spoil, … chemical wastes, biological materials, radioactive materials, … rock, sand, … and agricultural waste discharged into water." 33 U.S.C. § 1362(6); *see also Cundiff*, 555 F.3d at 213. Additionally, the Sixth Circuit in *Cundiff* held that, when material is excavated from a wetland, its redeposit in the same wetland can add a pollutant where none had been before. *Cundiff*, 555 F.3d at 214 (involving the addition of dredged or excavated dirt from a ditch dug by the defendants to defendants' own wetlands).

### (2) CWA citizen's suit particularities and requirements

The CWA claim here is a citizen's suit brought pursuant to 33 U.S.C. § 1365(a)(1), which in certain circumstances allows a private citizen to commence a civil action against a person "who is alleged to be in violation of … an effluent standard or limitation under" the CWA, such as 33

U.S.C. § 1311. 33 U.S.C. § 1365(a). The remedies available to citizen plaintiffs are limited and do not include compensatory damages. *See* 33 U.S.C. § 1365(a), (d); *Ailor v. City of Maynardville, Tenn.*, 368 F.3d 587, 590 (6th Cir. 2004) ("[t]he CWA limits the remedies available to citizen plaintiffs to injunctive relief, the assessment of civil penalties, and attorney's fees"; "[n]o compensatory damages are authorized under the CWA"); *see also Day, LLC v. Plantation Pipe Line Co.*, 315 F. Supp. 3d 1219, 1238 (N.D. Ala. 2018) ("[t]he inescapable prospective orientation of the phrase 'in violation' is mirrored by the relief the CWA affords plaintiffs suing under the citizen-suit provision, which does not give citizen-plaintiffs the right to damages") (internal quotation marks omitted). "Citizen suits are merely intended to supplement, not supplant, enforcement by state and federal government agencies." *Ailor*, 368 F.3d at 590. Except in limited circumstances not relevant to this case, the private citizen is required to provide notice of the alleged violation to the alleged violator, as well as to the appropriate federal and state agencies, at least sixty days prior to commencing the citizen's suit. 33 U.S.C. § 1365(b). "The purpose of the notice provision is to give the [appropriate federal and state agencies] a chance to initiate action that might preclude the need for a citizen suit." *Ohio Pub. Int. Rsch. Grp. v. Laidlaw Env't Servs., Inc.*, 963 F. Supp. 635, 639 (S.D. Ohio 1996).

Significantly, based on the language of the Act, the CWA "does not permit citizen suits for wholly past violations." *Gwaltney*, 484 U.S. at 64. "Rather, there must be 'an ongoing violation.'" *Frilling v. Honda of Am. Mfg., Inc.*, 101 F. Supp. 2d 841, 845 (S.D. Ohio 1998) (quoting *Gwaltney*, 484 U.S. at 59). "An ongoing violation is one where [there] is either [a] continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Day*, 315 F. Supp. 3d at 1239 (internal quotation marks omitted). Thus, "citizens must prove 'a state of either continuous or intermittent violation' to prevail." *Tamaska v. City of Bluff City,*

*Tenn.*, 26 F. App'x 482, 485 (6th Cir. 2002) (quoting *Gwaltney*, 484 U.S. at 57); *see also Gwaltney*, 484 U.S. at 57-59 ("the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past").  Citizens who bring CWA citizen suits only for past violations lack standing.  *Ailor*, 368 F.3d at 596-97 (in the context of a CWA citizen's suit, "[s]tanding concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct was occurring at the time the complaint was filed") (internal quotation marks omitted).

"A citizen may establish that a violation is ongoing either 1) by proving violations that continue on or after the date the complaint is filed, or 2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations."  *Tamaska*, 26 F. App'x at 485 (internal quotation marks omitted).  The question at the summary judgment stage is if there are any genuine issues of material fact regarding whether the defendant's alleged violations were continuing, or there was a continuing likelihood of their recurrence, at the time the complaint was filed.  *Allen Cnty. Citizens for the Environment, Inc. v. BP Oil Co.*, No. 91-3698, 966 F.2d 1451 (table), 1992 U.S. App. LEXIS 14906, 1992 WL 138410, at *1-2 (6th Cir. June 18, 1992) (affirming district court's determination "that the plaintiffs had failed to raise a genuine issue of material fact as to whether BP's alleged violations of its NPDES permit were continuing at the time the complaint was filed or that there existed a continuing likelihood of their recurrence at that time"; explaining that there was no "genuine issue of material fact as to whether BP was engaged in 'ongoing' violations," so plaintiffs "lacked standing to prosecute a citizen suit under the" CWA).

### (3) **The Wards' CWA citizen suit is for "wholly past violations"**

Here, the Wards assert that their citizen suit "seeks to address the unpermitted discharge of dredged and/or fill materials to waters of the United States, including wetland areas, in violation of Sections 301 and 404 of the CWA."  (Doc. No. 43-1 at PageID 428.)  More specifically, the

9

Wards claim that "[t]he earth moving activities that occurred during the installation of the two drainage channels" and "during the installation of the drainage tile throughout the subject property resulted in the placement of dredged material and/or fill material under CWA Section 404, 33 U.S.C. § 1344." (Doc. No. 13 at PageID 128-29.)  The Wards claim that the dredged material and/or fill material constitute a "pollutant" under the CWA. (*Id.* at PageID 132.)  And, the Wards claim that "[t]he earthmoving equipment used to place the dredged or fill material" constitute "point sources" under the CWA.  (*Id.* at PageID 128-29.)

In the Motion, the Stuckes argue that there is no evidence of any ongoing activity or likely future activity which could give rise to a CWA violation.  (Doc. No. 41 at PageID 308.)  Therefore, according to the Stuckes, "Plaintiffs' CWA claim seeks to impose liability for wholly past violations, which is non-cognizable under controlling authority." (*Id.*)  For purposes of analyzing this argument, the Court will assume, without deciding, that the Stuckes' other arguments in the Motion concerning the CWA claim would fail.  Thus, the Court will assume that the CWA claim implicates "navigable waters," is not time-barred, does not seek to impose liability on the incorrect parties, and is not precluded by the farming exception.

In response to the "wholly past violations" argument, the Wards argue that "[t]he continued presence of dredged or fill material constitutes a continuing violation of the CWA." (Doc. No. 43-1 at PageID 426.)  They assert that the Stuckes have not remedied their violation of the CWA because they (1) did not obtain a permit for their discharges and did not change their drainage and discharge of their wetland areas or (2) remove or remediate the dredge and fill material and alteration of the headwaters of Boyd Creek.  (*Id.*)

The Stuckes have met their initial burden of showing that the evidence fails to raise a genuine issue of material fact regarding whether the alleged violations were ongoing.  *Frilling*,

101 F. Supp. 2d at 847 ("[a]t the summary judgment stage, the defendant bears the burden of demonstrating that the evidence of record does not raise a genuine issue of material fact as to whether [the alleged] violation was ongoing" at the time the action was filed). As shown above, the "earth moving activities" that the Wards claim resulted in the placement of dredged or fill material in violation of the CWA all took place prior to 2015. (*See* Doc. No. 13 at PageID 132-33.) The Wards did not file the Complaint until 2018—long after those activities had ceased.

The Court then finds that the Wards have not met their burden to set forth specific facts showing that there is a genuine issue for trial. There is no evidence presented that the Stuckes were conducting any earth-moving activities when the Complaint was filed or since the Complaint was filed, and there is no evidence that the Stuckes will be conducting any earth-moving activities in the future. More broadly, there simply is no evidence to support that, at the time of filing the suit or at any time thereafter, there was an ongoing violation—a continuing "discharge of any pollutant" or the continuing likelihood of "a discharge of any pollutant" recurring. 33 U.S.C. § 1311; *Tamaska*, 26 F. App'x at 485. Therefore, the Court finds that there is no genuine issue of material fact as to whether the Stuckes were engaged in ongoing violations, so the Wards lack standing to prosecute a citizen suit under the CWA. *Allen Cnty. Citizens for the Environment*, 1992 WL 138410, at *1; *Crigler v. Richardson*, No. 3:08-0681, 2010 U.S. Dist. LEXIS 55782, 2010 WL 2265675, at *7 (M.D. Tenn. June 3, 2010) (where the alleged CWA violation took place in 2006, nothing indicated that the defendants were engaging in violations after 2006 or that any violation was continuous or intermittent, and the complaint was not filed until 2008, the alleged violation was "wholly past" and, therefore, the CWA claim was dismissed); *Bettis v. Town of Ontario, N.Y.*, 800 F. Supp. 1113, 1119 (W.D.N.Y. 1992) (granting defendants summary judgment on the CWA claim where "the undisputed facts demonstrate the absence of any activity which

could constitute an ongoing violation"); *Day*, 315 F. Supp. 3d at 1238 ("[c]essation of conduct, e.g., the discharging of a pollutant, under the CWA means that there is no longer a violation"; granting motion for summary judgment on the CWA claim where defendants' pipeline had not leaked since two years before the citizen-plaintiff filed the complaint); *c.f. Tamaska*, 26 F. App'x at 486 ("a defendant's voluntary cessation of a challenged practice after the filing of suit, but before entry of judgment, should not deprive the court of the ability to impose civil penalties for violations of the Act") (emphasis added).

The Wards fail to provide any evidence of a "continuous or intermittent violation." *Gwaltney*, 484 U.S. at 57. The title to the section of the Response brief addressing the "wholly past violations" issue is: "The Defendants' Discharges Are Ongoing and Unremediated." Tellingly, that title does not indicate that the alleged discharges are discharges of a pollutant. While it certainly may be true that, as a result of installing the grassed waterway channels and drainage tiles, there is a continuous or intermittent increase in the volume of water discharged from the channel on the end of the Stucke property, water is not a pollutant. 33 U.S.C. § 1362(6) (defining "pollutant" for purposes of the CWA); *Bettis*, 800 F. Supp. at 1119 ("water itself … is not a pollutant" and "[s]imply moving water from one place to another, therefore, does not constitute the discharge of a pollutant under the" CWA). Thus, even assuming as true the Wards' allegation that the drainage tiles installed by the Stuckes "significantly increased the rate and volume of water discharge and stormwater runoff into" the stream channel (Doc. No. 13 at PageID 128), there is no evidence to support that there has been a "discharge of any pollutant by any person" since the installation of the drainage tiles several years before this lawsuit was filed.[3] 33

---

[3] Moreover, in response to an interrogatory, the Wards admitted that they have no knowledge of any instance in the last ten years of either the Wards themselves or their neighbors removing any silt, dredged or fill material from the ditch referred to in the Complaint that runs next to their house. (Doc. No. 41-4 at PageID 406.)

12

U.S.C. § 1311. Therefore, the Wards' "remedy, if any, is not grounded in the Clean Water Act in federal court." *Bettis*, 800 F. Supp. at 1120.

The Response also implicitly acknowledges that the actions alleged to be CWA violations are not ongoing (and it is only the effects of those (alleged) violations that continue) when it states: "[I]t is a direct result of the Defendants' excavation activities and the installation of field drainage tiles—the unpermitted discharge of dredge and fill materials—that has led to the stream channel abutting the Plaintiffs' property to flood and continue to experience damages related to flooding" (Doc. No. 43-1 at PageID 430 (emphasis added)). *See Day*, 315 F. Supp. 3d at 1239 ("[w]hile some effects remain from the leak [of Defendant's pipeline], at the time of Plaintiffs' filing [the complaint] there was no point source discharge, nor was there any 'reasonable likelihood' of future point source discharge from Defendants' pipeline" so "[t]he violation is therefore not 'ongoing'").

The situation here is similar to the one presented in *Bettis*. In that case, the citizen-plaintiffs alleged that the developer of the subdivision in which they lived filled in that area—which had allegedly been a wetland—without a permit, in violation of the CWA. *Bettis*, 800 F. Supp. at 1115. However, that activity (i.e., filling in parts of the wetland) ceased years before the complaint was filed, and the evidence submitted by the plaintiffs in opposition to defendants' motion for summary judgment did not indicate that any further excavation occurred after that time or provide "any basis upon which to believe that such activity is likely to recur in the future." *Id.* at 1119. The plaintiffs also alleged that a stream had been diverted, causing erosion and flooding that damaged their property. *Id.* The district court explained that, while the evidence showed that the course of the stream had been diverted, "there is no indication that any pollutants were discharged either into the stream or from the stream into another body of water." *Id.* Although the plaintiffs "allege[d] that the resulting flooding has damaged their property," "[s]imply moving water from one place to

13

another … does not constitute the discharge of a pollutant under the Act." *Id.* Therefore, the court granted the defendants summary judgment on the CWA claim. *Id.*

The Court also notes that *Cundiff* is distinguishable from the present case on the continuing violation issue. First and foremost, whether there was an "ongoing violation" or a state of "continuous or intermittent violation" was never at issue in that case. *Cundiff* was not a citizen's suit. And, even after the Army Corp of Engineers had sent the defendant in that case a cease-and-desist letter "specifically prohibiting any further activity involving the placement of excavated or fill material into" defendant's own wetlands without a federal permit, the defendant "continued his draining and ditch digging activities, simply ignoring whatever government directives came his way," up to the government's filing of its lawsuit that alleged violations of 33 U.S.C. § 1311(a) for discharging pollutants into the waters of the United States without a permit. *Cundiff*, 555 F.3d at 204-05.

The Wards state in their Response brief that they "have <u>alleged</u> … that continuous and intermittent violations have occurred due to the Stuckes' failure to obtain a permit for its discharge." (Doc. No. 43-1 at PageID 434 (emphasis added).) In accordance with *Gwaltney*, such good faith <u>allegations</u> were sufficient at the motion for judgment on the pleadings (or motion to dismiss) stage to avoid dismissal. *Gwaltney*, 484 U.S. at 64 (33 U.S.C. § 1365 "confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation"); *see also Ohio Pub. Int. Rsch. Grp.*, 963 F. Supp. at 640 (recognizing that "proving on-going violations of environmental standards at the pleading stage, without the benefit of discovery, would often be an insurmountable obstacle to the initiation of a citizen suit"). But, of course, we are no longer at the motion to dismiss stage. The discovery period is complete. Now, at the summary judgment stage, citizen-plaintiffs must offer evidence to support their

14

allegations. *Anderson*, 477 U.S. at 248-50; *Gwaltney*, 484 U.S. at 66 (if the plaintiffs' allegations "were in fact, untrue, then the [defendants] should have moved for summary judgment on the … issue and demonstrated to the District Court that the allegations were sham and raised no genuine issue of fact. If the defendant fails to make such a showing <u>after the plaintiff offers evidence to support the allegation</u>, the case proceeds to trial on the merits, where the plaintiff must prove the allegations in order to prevail") (internal quotation marks omitted) (emphasis added). Yet, none of the evidence cited by the Wards in their Response brief (or otherwise) supports that "continuous and intermittent violations have occurred." (Doc. No. 43-1 at PageID 434.[4]) In short, after the Stuckes met their initial burden (*Celotex Corp.*, 477 U.S. at 323), the Wards failed to meet their burden of setting forth specific facts showing that there is a genuine issue for trial regarding whether the violation(s) are "wholly past." *Gwaltney*, 484 U.S. at 64 (the CWA "does not permit citizen suits for wholly past violations"); *see also Anderson*, 477 U.S. at 248-50; *Celotex Corp.*, 477 U.S. at 324 (Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position).

The Wards also assert in their Response brief that "[t]he dredge and fill remains in the altered wetlands, resulting in a continuing violation." (Doc. No. 43-1 at PageID 435.) However, the Wards do not provide any evidentiary material to support the assertion that dredge and fill remains in the altered wetlands. This dooms the Wards' argument regarding the (alleged) continued presence of dredge and fill material.

---

[4] In their Response brief, the Wards also state: "[A]s already briefed and decided upon in the resolution of the Defendant's Motion for Judgment on the Pleadings, the continued presence of dredged or fill material constitutes a continuing violation of the CWA." (Doc. No. 43-1 at PageID 434.) First, the Court made no such decision on that issue whatsoever. Perhaps unsurprisingly, the Wards do not provide any citation to the Court's prior order to support their statement. Second, and as specifically stated in that prior order, that prior motion was decided on an entirely different standard of review. (*See* Doc. No. 20 at PageID 247 (denying motion for judgment on the pleadings "in accordance with the standard set forth above for ruling on a motion for judgment on the pleadings," and expressly stating that "[t]he Court stresses that its decision is based on the allegations in the pleadings and that it is not making any decision regarding whether the CWA claim will or will not withstand any subsequent motion practice").)

Yet, even if there was evidentiary support for the Wards' assertion, the Court would not find that the continued presence of dredge or fill material constitutes an ongoing violation in this particular case. The Court acknowledges that this is an issue that has divided courts, and there are good arguments on both sides of the issue.[5] *See, e.g., Day*, 315 F. Supp. 3d at 1236 (explaining that "two competing interpretations have arisen since *Gwaltney*" regarding "what constitutes an ongoing violation").

One line of cases (cited by the Stuckes) supports that pollutant simply remaining in navigable water is not an ongoing violation. For example, the Second Circuit Court of Appeals has held that "[t]he present violation requirement of the [CWA] would be completely undermined if a violation included the mere decomposition of pollutants." *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.*, 989 F.2d 1305, 1313 (2d Cir. 1993). In that case, the defendant had owned and operated a trap and skeet shooting club where clay targets and lead shot (alleged pollutants) ended up in the adjacent waters of Long Island Sound. *Id.* at 1308. By the time the citizen-plaintiff had filed suit, the defendant had stopped operating the shooting club. *Id.* at 1312. However, "none of the lead shot or the clay target fragments" had been removed from the waters either at the time the plaintiff had filed suit or at the time the court issued its opinion. *Id.* at 1310. The Second Circuit held that the citizen-plaintiff's CWA claim "was directed at wholly past violations" and, therefore, "summary judgment was properly granted in [defendant's] favor dismissing plaintiff's suit against it." *Id.* at 1313; *see also, e.g., Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp.*, 807 F.2d 1089, 1094 (1st Cir. 1986) (dismissing citizen-plaintiff's CWA claim for violations of a permit that limited defendant's discharges of wastewater because there was no reasonable likelihood that defendant's alleged infractions would continue given that it had ceased

---

[5] Neither party directs the Court to a Sixth Circuit Court of Appeals decision on this issue, and the Court has not found a Sixth Circuit Court of Appeals decision addressing the issue or the competing lines of cases.

operating under the permit); *Wilson v. Amoco Corp.*, 33 F. Supp. 2d 969, 975-76 (D. Wyo. 1998) (granting summary judgment on plaintiff citizens' CWA claims "because Defendants presently are not adding—and were not adding at the time Plaintiffs filed their complaint—any pollutants from a point source into navigable waters or tributary ground water, and because there is no threat of a continuing or future CWA violation"); *Aiello v. Town of Brookhaven*, 136 F. Supp. 2d 81, 121 (E.D.N.Y. 2001) (dismissing citizen-plaintiffs' CWA claim where "[t]here is no particular warrant for assessing CWA penalties against the [defendant] for failing to obtain a permit in contemplation that the closed landfill at some future date might leak pollutants into navigable waters").

However, another line of cases from outside of the Sixth Circuit (cited by the Wards) provides legal support for the Wards' argument that "[t]he continued presence of dredged or fill material constitutes a continuing violation of the CWA" (Doc. No. 43-1 at PageID 426; *see also id.* at PageID 434-35). In contrast to the line of cases relied on by the Stuckes (including *Conn. Coastal Fishermen's Ass'n*), the line of cases relied on by the Wards essentially takes "a broad view of what constitutes an 'ongoing' violation: that the failure to undertake remedial measures to remove the effects of a wholly past violation of the CWA constitutes an ongoing violation." *Day*, 315 F. Supp. 3d at 1236 (citing *Sasser v. EPA*, 990 F.2d 127, 129 (4th Cir. 1993) ("[e]ach day the pollutant remains in the wetlands without a permit constitutes an additional day of violation"); *City of Mountain Park, Ga. v. Lakeside at Ansley, LLC*, 560 F. Supp. 2d 1288, 1293 (N.D. Ga. 2008); *Informed Citizens United, Inc. v. USX Corp.*, 36 F. Supp. 2d 375 (S.D. Tex. 1999)).

Again, the Court believes that, even if there was evidence of the continued presence of dredged or fill material, it would not constitute an "ongoing violation" here. In addition to the line of cases cited by the Stuckes (including *Conn. Coastal Fishermen's Ass'n*), support for this conclusion comes from the Sixth Circuit's statement in *Tamaska*: "A citizen may establish that a

violation is ongoing either 1) by proving violations that continue on or after the date the complaint is filed, or 2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Tamaska*, 26 F. App'x at 485 (internal quotation marks omitted). This statement shows that the requirements of a violation likewise must be ongoing. *Id.* Again, the alleged violation here is of 33 U.S.C. § 1311, which states that "the discharge of any pollutant by any person shall be unlawful," and it requires (1) an addition (2) of a pollutant (3) to navigable waters (4) from a point source (5) by a person. In contrast to, for example, a defendant whose pipe continues to leak pollutant into a navigable water, the mere <u>presence</u> of a pollutant does not meet these requirements. *See also Gwaltney*, 484 U.S. at 57 (explaining that the most natural reading of the "to be in violation" requirement from 33 U.S.C. 1365 is "a reasonable likelihood that a past polluter will continue to pollute in the future"); *Crigler*, 2010 WL 2265675, at *6-7 (despite plaintiff's argument that "courts have struggled to apply this wholly past doctrine and the better reasoned cases hold that pollution is not wholly past, so long as material deposited in a water of the United States remains in those waters," dismissing CWA claim where the single alleged violation occurred about four years prior to the institution of the litigation) (internal quotation marks omitted).

In summary, the Stuckes are entitled to summary judgment on Count 1. This does not mean, however, that the Wards are precluded from succeeding on other claims. *See, e.g., Wilson*, 33 F. Supp. 2d at 980-81 (despite granting summary judgment on citizen-plaintiff's CWA claim, denying summary judgment on common law claims of trespass, nuisance, and negligence claims, among others); *see also Day*, 315 F. Supp. 3d at 1240 ("[i]t must be emphasized that the conclusion that there is no ongoing CWA violation, because there is no ongoing discharge from a point source, does not necessarily absolve past violators from any and all liability for their acts"; "[o]ther state

and federal laws provide a latticework of responsibilities and liability for *past and present*

conduct") (emphasis in original).

### B.  <u>State Law Private Nuisance and Trespass Claims (Counts 2 & 3)</u>

The only remaining counts in the Complaint are two Ohio state law claims: private

nuisance and trespass.  Given that the Court has granted judgment for Defendants on the only claim

in the Complaint over which it has original jurisdiction, the Court declines to exercise

supplemental jurisdiction over Plaintiffs' remaining claims.  28 U.S.C. § 1367(c)(3) ("The district

courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has

dismissed all claims over which it has original jurisdiction"); *Harper v. AutoAlliance Int'l, Inc.*,

392 F.3d 195, 210 (6th Cir. 2004) (although dismissal is not mandatory because supplemental

jurisdiction is a doctrine of discretion, not of plaintiff's right, "[g]enerally, if the federal claims are

dismissed before trial, the state claims should be dismissed as well") (internal quotation marks

omitted).  Therefore, the Court dismisses the two remaining claims without prejudice to refiling

them in state court.  *Booker v. City of Beachwood*, 451 F. App'x 521, 522-23 (6th Cir. 2011)

("Once [a] district court dismisse[s] all of the claims over which it ha[s] original jurisdiction, it

act[s] squarely within its discretion by declining supplemental jurisdiction over the remaining

[state law] claim[s] and dismissing [them] without prejudice").  In this Order, the Court simply

decides that Plaintiffs' claim under the CWA fails, not whether the two state law claims may or

may not be viable or successful if refiled in state court.  *Bettis*, 800 F. Supp. at 1115 (declining to

retain jurisdiction over plaintiffs' state law claims and, therefore, dismissing them where the CWA

claim was plaintiffs' only federal claim and the court granted summary judgment to defendants on

the CWA claim).

### IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS, IN PART,** Defendants' Motion for

Summary Judgment (Doc. No. 41).  More specifically, the Court grants summary judgment to Defendants on Count One of the First Amended Complaint; declines to exercise supplemental jurisdiction over the remaining counts in the First Amended Complaint; and, therefore, dismisses Counts Two and Three of the First Amended Complaint without prejudice to refiling in state court. This case shall be **TERMINATED** on the Court's docket.

      **DONE** and **ORDERED** in Dayton, Ohio, this Friday, September 3, 2021.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

20